```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3      UNITED STATES OF AMERICA,

 4                         Plaintiff,        Case No. 11-20129
           -v-
 5
        SCOTT WILLIAM SUTHERLAND, et al.,
 6
                           Defendants.
 7      _____/

 8
        UNITED STATES OF AMERICA,
 9
                           Plaintiff,        Case No. 11-20066
10         -v-

11      JEFF GARVIN SMITH, et al.,

12                         Defendants.
        _____/
13

14                       STATUS CONFERENCE

15          BEFORE THE HONORABLE ROBERT H. CLELAND
                 United States District Judge
16         Theodore Levin United States Courthouse
                 231 West Lafayette Boulevard
17                    Detroit, Michigan
                   Thursday, June 20, 2013
18
        APPEARANCES:
19
        FOR THE PLAINTIFF:   SAIMA MOHSIN
20                           U.S. Attorney's Office
                             211 W. Fort StreetSuite 2001
21                           Detroit,MI 48226

22      FOR THE             JEROME SABBOTA
        DEFENDANTS:         (Group 1)
23                          Ribitwer & Sabbota
                            26862 Woodward Ave Unit 200
24                          Royal Oak, MI  48067

25
```

```
 1

 2    APPEARANCES  (Continued):

 3      FOR THE              KIM STOUT
        DEFENDANTS:          (Group 2)
 4                           370 East Maple Road, Third Floor
                             Birmingham, MI 48009
 5
                             MARK SATAWA
 6                           (Group 1)
                             Kirsch & Satawa
 7                           3000 Town Center, Suite 1800
                             Southfield, MI 48075
 8
                             RYAN MACHASIC
 9                           (Drozdowski)
                             Ryan H. Machasic, PC
10                           134 Market Street
                             Mount Clemens, MI 48043
11
                             ARTHUR WEISS
12                           (Jakiel)
                             30445 Northwestern Highway
13                           Suite 330
                             Farmington Hills, MI 48334-3102
14
                             WILLIAM SWOR
15                           (Group 4)
                             645 Griswold Street
16                           Suite 3060
                             Detroit, MI 48226
17
                             MARGARET RABEN
18                           (Group 3)
                             Gurewitz & Raben
19                           333 W. Fort Street
                             11th Floor
20                           Detroit, MI 48226-6613

21                           GERALD GLEESON
                             (Group 4)
22                           Miller Canfield Paddock & Stone, PLC
                             840 W. Long Lake Road
23                           Suite 200
                             Troy, MI 48098-6358
24
                             EMMA GREENWOOD (Via Telephone)
25
```

1

**To Obtain a Certified Transcript Contact:**
Christin E. Russell, RMR, CRR, FCRR, CSR - (248) 420-2720
Proceedings reported by electronic stenography.
Transcript produced by computer-aided transcription.

I N D E X

Hearing                                                    Page
Status Conference                                             4

E X H I B I T S

(None Offered.)

CERTIFICATE OF THE COURT REPORTER                            30

```
 1   Detroit, Michigan
 2   June 20, 2013
 3   3:07 p.m.
 4                    *              *              *
 5          THE COURT:  Good afternoon.  Please be seated.
 6          THE CLERK:  Ms. Greenwood is on the phone.
 7          THE COURT:  Oh, okay.  Good.  Ms. Greenwood, good
 8   afternoon.  Can you hear us?
 9          MS. GREENWOOD:  Yes.  Good afternoon.
10          THE COURT:  Very good.  We're on the record.  We're in
11   court on a semi-informal setting here, conference table
12   setting.  And I have for, let's see, for Group 1, Mr. Sabbota
13   is here.
14          MR. SABBOTA:  Jerome Sabbota on behalf of Group 1.
15          THE COURT:  And Mr. Satawa?
16          MR. SABBOTA:  Not here.
17          THE COURT:  Not here.  Mr. Satawa, not Mr. Sabbota.
18          MR. SABBOTA:  Sabbota is here.  Satawa is not.
19          THE COURT:  Okay.  Thank you.
20          For Group 2, Mr. Kraizman?
21          MS. STOUT:  No.  I'm here.
22          THE COURT:  Ms. Stout.
23          MS. STOUT:  Group 2, Kimberly Stout.
24          THE COURT:  I have highlighted names that are not
25   here.
```

```
 1           Group 3, Ms. Raben?
 2           MS. RABEN:  Here.
 3           THE COURT:  Group 4, Mr. Swor?
 4           MR. SWOR:  Yes.  And Mr. Gleeson.
 5           THE COURT:  And Mr. Gleeson.  And a few others are
 6    here as well.
 7           Ms. Mohsin is here for the Government.  Anybody else?
 8    Just you?
 9           MS. MOHSIN:  Just me, your Honor.
10           THE COURT:  We conferred just a little while ago about
11    the state of affairs with discovery.  And I'm presuming that,
12    since I haven't heard any news of difficulties or problems in
13    the meanwhile, I'm presuming, and hopefully so, that things are
14    proceeding as you planned.
15           Ms. Greenwood, as far as you're concerned, is that, is
16    that the case?  As far as you are aware, at least?
17           MS. GREENWOOD:  Well, I actually have a few issues to
18    bring up, your Honor.  May I start or?
19           THE COURT:  Yes.  Please do.  Please do.
20           MS. GREENWOOD:  Okay.  Well, there were a few separate
21    issues.  First of all, last week, we had discussed the issues
22    with the audio files.  And in discussions with the Government,
23    I had been awaiting a flash drive that would include a set of
24    audio files.  And my understanding was that it would be a set
25    of, a complete set of audio files because of the, the problems
```

1    we had been having with the productions 1 and 2 audio files.

2           I did receive a production on Tuesday afternoon and

3    have been reviewing that drive that contains over 14,000 audio

4    files.  I noticed that there were a selection of files that

5    could not be accessed or played.  And I make that distinction

6    because some of the files can actually be opened, but when

7    opened, the sound byte is a static sound.  It's actually not a

8    conversation of any kind.  And then there are other files that

9    are not able to be opened or played at all.  And there were

10   also some files that we have received in the first two

11   productions that were not, as far as I could tell, not on the

12   latest production.  And my analysis was by virtue of the file

13   name of the file.

14          So I took quite a bit of time to look at this.  I have

15   discussed this with the Government this morning.  I notified

16   them of, of my concerns last night.  And I, I believe, and in

17   our discussion, we discussed that it's likely that the files on

18   productions 1 and 2 that I received that are not on the new

19   drive are the playable versions of the files that are on the

20   new drive that cannot be accessed.  There are, your Honor,

21   there are over 1,000 files on the new drive that I just

22   received that cannot be played.

23          So I've asked the Government to confirm the number of

24   these playable files that were on the first two productions so

25   I can confirm that I'm, in fact, in receipt of the correct

1    number of those files and that they correspond with the number

2    of files on the newest production that cannot be played.

3           But I know I had represented that as soon as I

4    received this new production, I'll duplicate it and distribute

5    it to counsel.  It's just not, at least as far as I can tell

6    right now, not going to be as quick a process as I had

7    anticipated.

8           THE COURT:  What do you think needs to be done with

9    the assistance of the Government counsel now?

10          MS. GREENWOOD:  I'm sorry.  I'm sorry.  I didn't hear

11   -- hear you.

12          THE COURT:  Is this better?

13          MS. GREENWOOD:  Yes.

14          THE COURT:  What do you suggest should be done with

15   the assistance of Government counsel now, in view of the state

16   of affairs on audio files, recently received?

17          MS. GREENWOOD:  Well, I anticipated receiving a drive

18   that would be a complete production of all audio files,

19   including files that I've received in the first two

20   productions, because there was a question of, you know, is the

21   production complete.  And the numbers of the files I received

22   in productions 1 and 2 differed.  So ideally, I would like to

23   have in my possession the drive that includes the complete set

24   of audio files.

25          Now, if I, indeed, have in my possession the three

1    productions a copy of every audio file I should be in

2    possession of, then theoretically, I could consolidate the

3    groups of, of files and determine which are duplicates and

4    remove those, remove the files that aren't playable.  But as

5    everyone can understand, that would take some time.  And it

6    would prevent me from being able to provide counsel with all

7    these materials in, in a quick fashion.

8              So if, if it's not possible for me to get a drive that

9    I expected to get, which is the complete set of audio files,

10   then I would like to know a confirmation of the number of, of

11   the playable files that they have a special extension, that's

12   why they are very easily identifiable in productions 1 and 2.

13   They have the letters C-O-N-V in the file name.

14             If the Government can confirm that the number of these

15   files is indeed the number that I have, then I can, I can work

16   with that.

17             THE COURT:  So, Ms. Mohsin, would you weigh in on

18   this?  And use the microphone so Ms. Greenwood can hear you,

19   please.

20             MS. MOHSIN:  First of all, your Honor, I did have a

21   conversation with Ms. Greenwood just a few hours ago.

22             I want the record to be clear that the latest thumb

23   drive is a complete production.  I don't want there to be any

24   confusion on anyone's part that we haven't provided all of the

25   calls that were on the original optical disk.

1    The problem that I've been alerted to by Ms. Greenwood

2    is that on one of the three categories of calls, which is

3    specifically the push-to-talk calls on the Vern Rich wiretap,

4    that comprises a small number of calls, but nevertheless a

5    category of calls.  She is unable to open those audio files for

6    whatever reason.  And in a prior production, the same audio

7    files contained a C-O-N-V after the name.

8    So all of the calls have been provided.  Some are not

9    opening.  I'm not sure why they are not opening.  I'm trying to

10   get to the bottom of it.  But I don't want there to be any

11   confusion that we have not provided all of the calls.  In fact,

12   we've provided the calls now on three occasions based, first,

13   on what I had in my possession in my office; second, based on

14   what the agent's optical disk had, concerns that Ms. Greenwood

15   had raised about missing calls.  I don't even know which calls

16   were missing at what point or if, you know, how many, if it was

17   one or two, or if it was a more, you know, a larger issue.

18   And in the interests of trying to resolve this problem

19   and resolve it quickly, we unsealed the original optical disks

20   and copied them.  And that's what we provided as quickly as

21   possible.  We did a thorough scrub.  People in my office took

22   several days of, of looking through all of the audio files to

23   make sure that they were there.  So we feel confident that this

24   thumb drive that we've turned over to Ms. Greenwood is

25   complete.

1          What we indicated to her on the phone earlier today is

2     if the C-O-N-V suffix works on the previous production, and for

3     some reason, it's not working for you now when you open up that

4     file, then take the second production and just copy that for

5     defense counsel, because it seems to be functioning.  It's the

6     same call, but one doesn't function and the other one has the

7     C-O-N-V at the end of it.

8          We're trying to get to the bottom of this, but I was

9     alerted to it just a few hours ago, and I'm not sure what the

10    problem is.

11         THE COURT:  Well, it sounds like it's to be continued,

12    Ms. Greenwood.  But it sounds as though Ms. Mohsin, for the

13    Government, is here saying that you actually have those calls

14    twice, one set apparently that does open, and the most recent

15    set, that for some reason, does not.

16         And I think that you would be -- it would be wise then

17    simply to direct you to continue to work with Government

18    counsel, communicate with counsel in an effort to make sure

19    that you have playable files assembled on one drive, which can

20    be then distributed in the, in the very near future.  So other

21    than that, I don't know that there's anything else that I

22    should be doing to supervise that.

23         Is there anything that you can think of, Ms.

24    Greenwood, that the Court ought to be doing or declaring or

25    suggesting?

1          MS. GREENWOOD:  I, I don't think so, your Honor.  I

2     agree with you, and I'll continue to work with the Government.

3     It's just a little bit frustrating.  And, and as I'm constantly

4     thinking about containing costs, you know, this will be the

5     third time that we've tried to assess the situation with the

6     audio files.  And it's, it's just a little bit frustrating.

7          These are, these are productions that have to be sent

8     on flash drives, typically, because there are so many files and

9     flash drives are expensive.  And every time we make a shipment

10    to the defense team, because there are so many of them, and we

11    send them by secured FedEx format, it's hundreds of dollars.

12    So I definitely want to be sure that when we send these out

13    this time, that everything is, is complete.

14         Beyond the audio files, though, I also wanted to

15    mention that I receive four additional pieces of discovery.

16    This is new discovery that we hadn't received before.  And I

17    had been under the impression that the discovery production was

18    complete.  And this was also something that I discussed with

19    Ms. Mohsin and Mr. Straus this morning.

20         There are three audio files on these disks and one

21    video which, frankly, compared to the rest of the volume here

22    in this case, is not that significant.  But what is significant

23    from my perspective is two things:

24         One, the iPads were not configured to play video.  And

25    they weren't actually configured to play the type of audio

1    files in the format that these particular audio files were

2    produced.  So one additional thing that I'm going to have to do

3    is to backtrack a little bit with the vendor, whom I spoke with

4    this morning, about these new files and how to incorporate them

5    into the iPad configuration.

6          Beyond that, which also, again thinking about cost

7    containment, this is going to cost money.  But beyond that, I

8    had specifically discussed all the applications that would be

9    on the iPad devices with each of the facilities, with each

10   person at the facility to see what their response was.

11         And one of the facilities in particular has a policy

12   that all applications that aren't necessary for the review of

13   discovery be disabled or removed.  So that's, in fact, what we

14   did, your Honor.  We had removed the video play capacity on the

15   iPads.  So that's now something that we're going to have to add

16   to the iPad devices.  And that's going to take time.  And

17   that's going to take some money.

18         Now, I did speak with the vendor this morning.  The

19   vendor has, you know, tried to make this, this process as easy

20   as possible.  They are very eager to help.  I'm very encouraged

21   that we'll make this work.  But I just wanted to alert the

22   Court that this may have been -- it's certainly not -- it was,

23   it was something that I did not anticipate having to provide

24   on, on the iPad devices.

25         THE COURT:  Okay.  Anything else, Ms. Greenwood?

1        MS. GREENWOOD:  I also learned that there's more

2    discovery on its way.  And maybe I'll leave it to the

3    Government to discuss that.  But it would definitely help me,

4    and again, I indicated this to the Government, in terms of

5    containing costs in this case to have an understanding of

6    what's coming as soon as that's possible, so I can anticipate

7    how to contain costs further.

8        THE COURT:  Ms. Mohsin, do you think you have

9    assembled all of the various investigative reports, at least

10   made an effort to do that from the, what is it, 20 or 30

11   different law enforcement agencies implicated in the case?

12       MS. MOHSIN:  Yes and no, your Honor.  We have made an

13   effort.  We've turned over everything that we had in our

14   possession.  But as I'm sure the Court can appreciate, there

15   are going to be categories of things that we do not have in our

16   possession that we are actively trying to determine if these

17   things exist, where they are, and to obtain them so that we can

18   produce them.  So we're very diligent in our ongoing

19   obligation.

20       The disks that I provided to Ms. Greenwood with the

21   latest production had just come into my possession, so I

22   immediately had them copied and turned over so that they could

23   be included.

24       I think though, your Honor, it's worth pointing out, I

25   pointed out to Ms. Greenwood when we spoke earlier today, that

1    there are going to be things that we receive that I don't know,

2    either that they currently exist or where they are located, et

3    cetera, that as I receive them and want to turn them over, it

4    may not be possible to put them all on the iPad.  And to some

5    extent, maybe, you know, there should be a period of time that

6    perhaps they can be just given to defense counsel on a disk,

7    and maybe just single copies made for the purpose of review.

8            But I can't imagine that we can keep holding up the

9    iPads until all the rolling sort of pieces of discovery come

10   in, because that's inevitable in any case.  You're going to

11   have people telling you, witnesses or agencies saying, hey, I

12   found this and you should have this, that sort of thing.

13           THE COURT:  Ms. Greenwood, yeah -- that, well, I think

14   that's a fundamentally sensible observation.  There may be

15   some, like if there's one video file in the whole collection of

16   15,000 pages or items of Rule 16 materials, I don't think it

17   makes sense to do anything other than provide that one video to

18   the, the relevant defendant's counsel, and let them deal with

19   it perhaps on consultation with client and so forth.  That's

20   going to happen from time to time.

21           (Mr. Satawa present, 3:23 p.m.)

22           THE COURT:  Let me ask you this, Ms. Greenwood.

23           On the assumption that there are going to be periodic

24   -- periodically reports and other documentation that may

25   essentially dribble in over time, would it be more productive,

 1    from your standpoint, to receive those things on an immediate

 2    basis or perhaps on a monthly basis, collecting whatever may

 3    come in, in the month of June and turning it over on or about

 4    the 1st of July, for example?  The alternative being maybe you

 5    would get three submissions during the month of June, ten days

 6    apart, as these things are received.

 7            Which would be a more productive way of doing

 8    business, as far as you're concerned?

 9            MS. GREENWOOD:  Well, from my perspective, and

10    frankly, I think I would defer to counsel to see what they

11    would prefer.  But from my perspective, I think that as a

12    defense attorney myself, I would like to get my hands on the

13    discovery as soon as I can.  So I would like to provide that to

14    the defense as quickly as is able to be produced.

15            As far as loading everything up onto the iPads, I did

16    consider the prospect of additional discovery productions in my

17    initial assessment of cost for this process.  And we will

18    certainly have to think of the most ideal way to load new

19    discovery when it's, when it's received.

20            But if, if the wave of discovery is -- my impression,

21    your Honor, was that the discovery production was complete.  So

22    now that I know there may be some more coming, I really hadn't

23    thought through how that might work best.  But I think I would

24    like to receive the discovery as soon as the Government is able

25    to produce it so I may provide it to counsel.

1          THE COURT:  Okay.

2          MS. GREENWOOD:  And then --

3          THE COURT:  That's fine.

4          MS. GREENWOOD:  And then once we see what it is and

5    how much it is, we can determine when it makes sense to send

6    the iPads back to the vendor.

7          I did, just very quickly, I did speak with the vendor

8    early on about this prospect, because of course we know that

9    discovery productions are often on a rolling basis.  And

10   they've assured me that they'll do whatever they can to

11   expedite the, the transfer of discovery to the iPads when the

12   iPads are all sent back.

13         So I'm pretty confident we can come up with a good

14   and, and expedited solution to that.  It's just hard to know

15   the answer to your question without knowing what, what types of

16   data we're, we're talking about.

17         THE COURT:  Well, I hear you saying that you'd rather

18   have it transmitted as it is received by the Government.  And

19   that's fine.  I think that let's just make that decision, and

20   let's set that as the protocol and that's finished.  There we

21   have it.  Thank you.

22         I would observe in connection with that, that I

23   commonly see in preparation for significant trials,

24   significantly large criminal indictments, that Rule 16 material

25   is continuingly discovered, especially where there are multiple

STATUS CONFERENCE - 6/20/2013

1   agencies involved.  And I think every attorney that's tried a

2   couple of cases has had the same experience.  And the attorneys

3   we have here have tried a few cases.  So I don't think it's

4   going to be any surprise to anybody.

5        So receive it or send it on, reasonably

6   contemporaneously when it's in the hands of the Government.

7   That will be satisfactory.  Let's just do that.

8        Right, Ms. Mohsin?

9        MS. MOHSIN:  We will certainly do that, your Honor.

10       THE COURT:  Thank you.

11       Let's move to another topic, and that is in terms of

12  scheduling, generally.  I think that we can fall back, as far

13  as I'm concerned, to approximately a 60-day status conference

14  schedule here, which would have us together again some time in

15  August.  We'll determine a date.  My case manager actually will

16  determine the date for us, but late August to determine what's

17  going on here.

18       And let me suggest further something new and

19  different:  Setting a trial date.  Let me throw this on the

20  table and see how Group 1 reacts.

21       Pick the jury on April 15th, 2014, Group 1, whoever is

22  left.  What do you think, Group 1 or 2 or 3?

23       MR. SABBOTA:  Well, the answer would depend on how

24  soon we get all the discovery.

25       THE COURT:  You're going to get it -- well, you've got

 1   -- you're within a very short time of getting everything,

 2   everything of significance that you're going to get now.  So

 3   let's just operate on the assumption that you have, or will

 4   have within a very short time whatever there is to be had that

 5   is, that is of any significance to your client.

 6            Operating on that assumption, what do you think?

 7            MR. SABBOTA:  There is a trial that is set that I'm

 8   involved in --

 9            THE COURT:  April.

10            MR. SABBOTA:  -- with Judge Goldsmith's court.

11            THE COURT:  Well, everybody is going to have

12   conflicts.  I will not be able to satisfy everyone, that's for

13   sure.  By the way, use the microphone if you would, please.

14            MR. SABBOTA:  Oh, I'm sorry.  I have no problem with

15   April 15th.

16            THE COURT:  Okay.  And that would mean, I would imply

17   with that a final pretrial conference, change of plea, final

18   change of plea opportunity.  My case manager suggests February

19   11th, which is March, April, is about two months before trial.

20   There would be motion deadline, probably a month before that,

21   January, roughly early January.  So we've got to get this ball

22   rolling with somebody.  And I think Group 1 sounds pretty good

23   to me.  I don't know what differentiates 1, 2, 3 or 4 offhand.

24   But if anybody else has any alternative suggestions or would

25   like to go first.  Mr. Swor perhaps?

1      MR. SWOR:  No.  When, when the Court established these

2  four groups, we were told that the four groups would not --

3      THE COURT:  Let's try the microphone, because Ms.

4  Greenwood is really going to be unable to hear anything unless

5  we use the microphone.

6      MR. SWOR:  This has nothing to do with her anyway.

7      THE COURT:  Well, right.  But in fairness to her.

8      MR. SWOR:  When the Court established four groups, the

9  Court said the four groups were not necessarily going to be the

10  trial groups.

11      THE COURT:  Okay.

12      MR. SWOR:  So I think we first need to determine what

13  the trial groups are going to be.

14      THE COURT:  Not necessarily.  But now that we have

15  them grouped together, I guess I would ask in terms of trial,

16  why not?

17      And perhaps Ms. Mohsin needs to weigh in on this.  The

18  Government may have interests of economy of production, for

19  example, commonality of witnesses, things of that nature that

20  might make it inadvisable to try whatever the remainder may be

21  of Group 1 by next year together, or may think differently

22  about the suggestion -- suggested categorizations.  Although,

23  it was initially I think the Government's suggestion that these

24  be categorized in, in this way.  As a matter of fact, I think I

25  have the order that reflects that in my hands.

1           So, Ms. Mohsin, what's your offhand impression about

2    grouping for purposes of trial?

3           MS. MOHSIN:  Well, I do recall the Court did make

4    that, that record that these are not necessarily for trial.

5    However, when we did try and fashion a group 1, 2 and 3, 4, we

6    were trying at least preliminarily to keep that sort of in

7    mind.

8           For instance, Group 1 is comprised of both defendants

9    that are in both indictments.  So to some extent, that makes

10   sense from our point of view, because they have -- they are

11   charged in both indictments.  And that's why they were included

12   in the Group 1, from our point of view.

13          The remaining defendants, loosely, we sort of tried to

14   put them with similar, similar thoughts in mind.  But I, I can

15   say that Group 1, certainly we were of the mind that because

16   they are charged in two indictments, it made sense for them to

17   be in Group 1 together.

18          THE COURT:  And then there are some sorts of

19   commonalities amongst Group 2, amongst the people in Group 3,

20   and amongst the people in Group 4 that, at least preliminarily,

21   you thought might --

22          MS. MOHSIN:  Yes.

23          THE COURT:  -- be sensible to bind them together in

24   this way?

25          MS. MOHSIN:  Yes, but not as tightly as Group 1.  In

1   other words, Group 1 really is because of those two cases, and

2   we tried to do the same in Groups 2, 3 and 4, based on what we

3   thought might be similar --

4           THE COURT:  Perhaps it might be productive for me to

5   direct Government counsel to proffer a memorandum, similar to

6   this document No. 455 that is a memorandum regarding defendant

7   groupings.  This is from August of 2012.  And based upon this,

8   we established the pretrial groupings.

9           But perhaps it would be time and, and be productive to

10  engage in this, to have a reassessment of the, of the groupings

11  and to create a different document in a different order that

12  would bind, with defense counsel's input certainly, but that

13  would eventually produce an order that I could enter that would

14  identify, at a minimum, that would identify an initial group

15  for whom we could target a trial date and leave the rest of

16  them alone.  And I would think that that would be a group that

17  would approximate ten in number.

18          And I'm thinking that you might be able to proffer

19  those suggestions within about maybe two or three weeks.  And

20  give counsel for the defense an opportunity to react and

21  discuss and so forth and confirm, I hope.  And then I could

22  enter an order that would identify a certain number of people

23  and stick with this April, I think we should, at least, stick

24  with this April of 2014 target for a trial with a motion

25  deadline in advance of that or final pretrial conference a

STATUS CONFERENCE - 6/20/2013

1    little bit down the line.

2         What would you think of that idea, Ms. Mohsin?

3         MS. MOHSIN:  We can certainly do that, your Honor.  I

4    feel fairly comfortable, though, that Group 1 as it's currently

5    listed would be that first group.

6         THE COURT:  Is that right?

7         MS. MOHSIN:  Yeah.  Because Group 1, they are indicted

8    in both cases.  And so the proofs for the second indictment

9    would overlap the proofs in the first -- the proofs of first

10   indictment would overlap the second.  In other words, they are

11   relevant to one another.  So we did group those because of that

12   fact and because they had similar issues.

13        I could, I could feel comfortable telling the Court

14   that Group 1 is a group that we would want to try as a trial

15   group.  With the rest of them, if the Court wanted, you know,

16   that proffer I could make that now.  Obviously, if counsel want

17   to weigh in, and the Court would like that.

18        THE COURT:  I have no reason in particular to suggest

19   Group 1 for the initial trial group as opposed to Group 2, 3 or

20   4.

21        MS. MOHSIN:  Okay.

22        THE COURT:  I'm open to suggestion, counsels' desires

23   or agreement or --

24        MS. STOUT:  Your Honor, if I --

25        THE COURT:  -- motion practice or whatever may be the

1    case.

2              Ms. Stout?

3              MS. STOUT:  I'm so sorry to interrupt.  My client is

4    now in Midland County jail.  Mine is Defendant No. 8, Vincent

5    Witort.  And he has repeatedly reminded me to express his right

6    to a speedy trial.  So if the Government wants to consider

7    those issues when they proffer their memo.  He's in Group 2.

8              THE COURT:  Everybody, everybody deserves a speedy

9    trial.

10             MS. STOUT:  Of course.  But he is incarcerated and

11   he's in Group 2.  Just for the record, your Honor.  Thank you,

12   very much.

13             THE COURT:  Thank you.

14             Mr. Weiss is attending as well.  Hello.

15             MR. WEISS:  Your Honor, my client is in Group 1.  He

16   resides in Alabama.  He is not detained.  But because the

17   mechanism has not been effectuated for him to get discovery, he

18   knows very little about the case and he did not have the funds

19   to come up and confer with me.  And in speaking with Bob Ranz,

20   there were not funds for me to go and confer with him.

21             So until such time as all of the iPads or whatever is

22   going to transpire, it makes it more problematic for

23   individuals such as him to assist counsel in preparing for

24   trial.  And it is my understanding that there are a number of

25   individuals in Group 1 that are detained.  So I would imagine

STATUS CONFERENCE - 6/20/2013

1    their access to materials have been equally limited.

2         So I'm asking the Court, one, to revisit the setting

3    of the trial date.  And two, given the fact that I would assume

4    that non-detained defendants had greater access to their

5    attorneys and the materials at this juncture, that perhaps a

6    group other than Group 1 be the first to go and simply so that

7    there's additional time for the defendants that are hindered by

8    their status and location of assisting counsel in preparing for

9    trial.

10         THE COURT:  That's almost exactly the opposite of the

11   argument Ms. Stout produced or presented in which her

12   incarcerated defendant wants a speedier trial, rather than a

13   more delayed trial.

14         MR. WEISS:  I can't speak for her, but she's in a

15   different group as well.

16         THE COURT:  Okay.  But she's got, you and she both --

17   so but your client has a cohort of incarcerated defendants who,

18   on the one hand, want a speedy trial, but on the other hand,

19   have a difficulty in reviewing discovery.  So we've got

20   considerations that go in two opposite directions in that

21   regard.  But I appreciate your comments, and they are worth,

22   you know, they are worth listening to.

23         MR. WEISS:  Thank you, Judge.

24         THE COURT:  All right.  So you recommend Group 1 as a

25   trial group, Ms. Mohsin, right?

STATUS CONFERENCE - 6/20/2013

1          MS. MOHSIN:  I would like to take advantage of the

2    week or two to, to give it further consideration.

3          THE COURT:  And consultation, I would suggest.

4          MS. MOHSIN:  Yes.  And, you know, so that everyone can

5    be heard and we can make a, a good decision.

6          THE COURT:  And I'm operating here also on the

7    assumption that with the assistance of Ms. Greenwood, that

8    discovery material that Mr. Sabbota was talking about will be

9    produced and will be accessible and will be able to go through.

10   We've got 10 months now, between now and a proposed

11   hypothetical hoped-for trial date, less than that for motion

12   practice.  But it seems to me that we need to set some sort of

13   benchmarks here, even if, even if we need to move, move the

14   mark as, as the time approaches.  You know, that can be done.

15   But leaving it in a, in a sort of --

16          MR. SABBOTA:  Limbo.

17          THE COURT:  Well, limbo, yeah.  Embryonic or an

18   undefined condition is somehow unsatisfying.

19          Mr. Satawa?

20          MR. SATAWA:  I apologize for my lateness, your Honor,

21   first of all.

22          Your Honor, if we are going to get to the point where

23   we're discussing dates, may the Court or counsel inquire of the

24   Government as to, and again, nothing will be held, held -- they

25   will not be held to this, but if counsel could have an idea as

1   to the approximate length of the Government's case-in-chief if

2   Group 1 were to be tried together?

3            THE COURT:  That's a perfect topic for

4   counsel-to-counsel consultation.

5            MR. SATAWA:  Yes, your Honor.

6            THE COURT:  Absolutely.  I think you ought to talk

7   about that.  Good idea.  And so over the next couple of weeks,

8   14 days, let's aim at talking about that.

9            And, Ms. Mohsin, if you would be so kind as to provide

10  the Court and everybody else with a memorandum, the

11  Government's suggestion of a first grouping of defendants to be

12  set for trial, operating on the assumption that I'm looking at

13  the middle of April for jury selection.  You might even include

14  in that the product of your discussion, Mr. Satawa just

15  mentioned in terms of estimated complexity of the case and

16  length of, expected length of presentation of Government

17  proofs.  That would be, I'm sure, very helpful.

18           And to the extent that you are able to communicate

19  here and confer with liaison counsel, in Group 1, 2, 3 and 4,

20  I'm sure they'll assist you as well.

21           And we'll get that, so then the next event then on the

22  record would be a memorandum of suggestion of trial grouping,

23  initial trial grouping, with some commentary about the expected

24  complexity of the Government's case-in-chief.  And I'll allow a

25  reasonable period of time for any additional commentary that

```
 1    counsel might wish to offer.  And then obviously subject to

 2    later alteration for good cause and reasonable justification,

 3    I'll, I'll issue a scheduling order that's going to identify

 4    the group, and identify a date.  And we'll do the best we can

 5    with that.

 6             I think we have to do something along those lines,

 7    just to get off the dime here, so to speak.  Get this discovery

 8    in your hands.  Get it -- start the review process -- start,

 9    continue the review process.  And move through the cold weather

10    with you folks doing good work with your clients.

11             So beyond that, I don't have anything for you.  I

12    appreciate those things.  We'll have a meeting though in

13    August, 60 days hence, with liaison counsel.

14             Do you have a date, particularly?

15             THE CLERK:  August 22nd at three.

16             THE COURT:  22nd of August at three p.m.

17             You'll get a notice of that also, electronically,

18    Counsel.

19             And anybody else have anything?  Yes, sir?  Mister?

20             MR. MACHASIC:  Your Honor, Ryan Machasic on behalf of

21    --

22             THE COURT:  Mr. Machasic, yes, sir.

23             MR. MACHASIC:  Yes, sir.  In the Government's

24    memorandum, could they also include the anticipated times after

25    the first group is tried, that they would anticipate then
```

1   trying the second, third and fourth groups so we can advise our

2   clients who are sitting in detention when they might expect a

3   trial date based on that memorandum?

4           THE COURT:  Some of that is going to be my decision,

5   you realize, in terms of putting all of the space between

6   succession of trials.  But we could, we could ask for an

7   estimate at least, or a suggested suggestion for -- suggested

8   schedule through that succeeding number of months or whatever

9   may be before you.

10          I invite you to take up Mr. Machasic's idea, if you'd

11  like to comment upon it in a few weeks.

12          So approximately two weeks from now, maybe Friday, two

13  weeks hence would be good, if you can manage that.

14          MS. MOHSIN:  Judge, I only foresee that with the

15  number of attorneys and the need to communicate not just with

16  liaison counsel, it may take a little longer.  I also have an

17  intervening trial.  So if I could have a little bit longer, I'd

18  appreciate that.

19          THE COURT:  That's fine.

20          MS. MOHSIN:  Okay.

21          THE COURT:  That's fine.  Do you want to target three

22  weeks, for example?

23          MS. MOHSIN:  That would be helpful, your Honor, maybe

24  during the week of July 8th, if that's, in fact, three weeks.

25  I'm not sure.

 1          THE COURT:  That would be fine.

 2          And I would -- I'm not sure exactly what I need to

 3   enter in terms of speedy -- recognition of speedy trial.  This

 4   is a complex case; it's been certified in that regard.  I'm not

 5   -- what should the Court enter or what must the Court enter in

 6   terms of an order continuing and extending based upon what's

 7   already been entered as far as you're concerned, Ms. Mohsin?

 8          MS. MOHSIN:  Your Honor, I would, I would suggest an

 9   order that tracks the language of the Court's two prior orders

10   regarding the complex case provision of the Speedy Trial Act,

11   and really the scheduling order with the trial date for that

12   period of time so that we don't have to enter further orders

13   until that trial date.

14          THE COURT:  Okay.  I will look at that, at your

15   suggestion.

16          MS. MOHSIN:  I can also --

17          THE COURT:  And enter an order based upon my

18   understanding of the progress of discovery here and the

19   consultation that's necessary.

20          MS. MOHSIN:  In previous -- we had done this, the

21   complex case thing.  If the Court wants me to file a motion

22   again, I can do that again.  I had previously filed two motions

23   for it.

24          THE COURT:  I'm taking that as a verbal motion.

25          MS. MOHSIN:  Okay.

1          THE COURT:  Here and now.  And I'll find a way of

2    docketing that and, and then act upon it accordingly.

3          Does anybody else have anything else for discussion

4    that we haven't covered?

5          I see nothing else.  Thank you.

6          Thank you, Ms. Greenwood.  That's all.

7          MS. MOHSIN:  Thank you, your Honor.

8          MS. STOUT:  Thank you.

9          MS. GREENWOOD:  Thank you.

10         (Proceedings adjourned at 3:45 p.m.)

11                           *       *       *

12

13                   **CERTIFICATE OF REPORTER**

14

15         As an official court reporter for the United States

16   District Court, appointed pursuant to provisions of Title 28,

17   United States Code, Section 753, I do hereby certify that the

18   foregoing is a correct transcript of the proceedings in the

19   above-entitled cause on the date hereinbefore set forth.

20

21

22              s/ Christin E. Russell

23         CHRISTIN E. RUSSELL, RMR, CRR, FCRR, CSR

24              Federal Official Court Reporter

25