```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3      THE UNITED STATES OF AMERICA,

4                    Plaintiff,        Case No. 11-20129
          -v-
5
       SCOTT SUTHERLAND, et al.,
6
                     Defendant.
7      _____/

8      THE UNITED STATES OF AMERICA,

9                    Plaintiff,        Case No. 11-20066
          -v-
10
       JEFF GARVIN SMITH, et al.,
11
                     Defendant.
12     _____/

13     THE UNITED STATES OF AMERICA,

14                   Plaintiff,        Case No. 12-20387
          -v-
15
       SMILEY VILLA,
16
                     Defendant.
17     _____/

18                      STATUS CONFERENCE

19           BEFORE THE HONORABLE ROBERT H. CLELAND
                  United States District Judge
20           Theodore Levin United States Courthouse
                  231 West Lafayette Boulevard
21                     Detroit, Michigan
                       August 22, 2012
22
       APPEARANCES:
23
       FOR THE PLAINTIFF:   SAIMA MOHSIN
24                          ERIC STRAUS
                            JEROME MAIATICO
25
```

```
 1    FOR THE DEFENDANT:    CRAIG DALY
                            (Sutherland, D-1)
 2
                           JAMES BURDICK
 3                         (Standing in for Craig Tank)
                           (Ronald Roberts, D-2)
 4
                           LOREN DICKSTEIN
 5                         (David Roberts, D-3)

 6                         ROBERT MORGAN
                           (Standing in for Sidney Kraizman)
 7                         (McKeoun, D-4)

 8                         JEROME SABBOTA
                           (SMITH, D-5)
 9
                           PATRICIA MACERONI
10                         (DARRAH, D-6)

11                         MARK SATAWA
                           (Vandiver, D-7)
12
                           KIM STOUT
13                         (Witort, D-8)

14                         CHRISTOPHER SEIKALY
                           (Mastromatteo, D-9)
15
                           JUAN MATEO
16                         (VERNON RICH, D-10)

17                         DAVID STEINGOLD
                           (Standing in for Richard Lustig)
18                         (Reide, D-11)

19                         DAVID STEINGOLD
                           (Castano, D-12)
20
                           SAMUEL CHURIKIAN
21                         (NELSON, D-13)

22                         ROBERT MORGAN
                           (Michael Rich, D-14)
23
                           CLAUDE BEAVERS
24                         (Melioli, D-15)

25                         JOSEPH NISKAR
                           (Downs, D-16)
```

```
 1                              RYAN MACHASIC
                                (Drozdowski, D-17)
 2
                                RICHARD MORGAN
 3                              (Villa, D-18)

 4                              ARTHUR WEISS
                                (Jakiel, D-19)
 5
                                THOMAS JAKUC
 6                              (Kitchens, D-20)

 7                              DAVID CRIPPS
                                (Wesaw, D-21)
 8
                                WILLIAM SWOR
 9                              (Preletz, D-22)

10                              MICHAEL MCCARTHY
                                (Quant, D-23)
11
                                MARGARET RABEN
12                              (Perkins, D-24)

13                              JAMES BURDICK
                                (Standing in for Edward Wishnow)
14                              (Rhodes, D-25)

15                              SCOTT KEILLOR
                                (Standing in for Don Ferris)
16                              (Delong, D-26)

17                              JEFFREY BUTLER
                                (Christopher Cook, D-27)
18
                                GERALD GLEESON
19                              (Palazzola, D-28)

20                              MICHAEL RATAJ
                                (Burby, D-29)
21
                                THOMAS WARSHAW
22                              (Lambert, D-30)

23                              SCOTT KEILLOR
                                (Jason Cook, D-31)
24
                                NICHOLAS VENDITELLI
25                              (Taylor, D-32)
```

```
 1                              JAMES FEINBERG
                                (Battaglia, D-33)
 2
                                ROBERT KINNEY
 3                              (Lonsby, D-34)

 4                              JOAN MORGAN
                                (Werth, D-35)
 5
                                WALTER POOKRUM
 6                              (Ledford, D-36)

 7                              BEN GONEK
                                (Cicola, D-37)
 8
                                JAMES BURDICK
 9                              (Tagliavia, D-38)

10                              SAMUEL CHURIKIAN
                                (Standing in for Mark Magidson)
11                              (May, D-39)

12                              JOHN MCMANUS
                                (Friscioni, D-40)
13
                                JOSEPH ARONE
14                              (Scudder, D-41)

15

16

17

18
              To Obtain a Certified Transcript Contact:
19     Christin E. Russell, RPR, CRR, FCRR, CSR - (248) 420-2720
              Proceedings produced by mechanical stenography.
20        Transcript produced by computer-aided Transcription.

21

22

23

24

25
```

TABLE OF CONTENTS

Hearing                                                    Page
  Status Conference                                         3


Exhibits:
            (None Offered.)


  CERTIFICATE OF REPORTER                                   36

STATUS CONFERENCE - 8/22/2012                                    6

```
 1   Detroit, Michigan
 2   August 22, 2012
 3   2:07 p.m.
 4                    *              *              *
 5        (Call to Order of the Court; all parties present.)
 6             THE CLERK:  Calling case No. 11-20129.  United States
 7   of America vs. Sutherland.
 8             And calling case No. 11-20066, United States of
 9   America vs. Jeff Garvin Smith.
10             Counsel for the Government, please state your
11   appearances for the record.
12             MS. MOHSIN:  Good afternoon, your Honor.  Saima
13   Mohsin, Assistant United States Attorney appearing on behalf of
14   the United States.
15             MR. STRAUS:  Good afternoon.  Eric Straus on behalf of
16   the United States.
17             MR. MAIATICO:  Good afternoon.  Jerome Maiatico, trial
18   attorney with the Department of Justice on behalf of the
19   Government.
20             THE COURT:  Thank you.  Be seated and the Court will
21   list each defendant.  And counsel appearing on behalf of each
22   of these defendants will please stand and state your name for
23   the record firmly, so that the record will be clear to record
24   your statement.
25             THE CLERK:  Defendant No. 1, Scott Sutherland.
```

UNITED STATES vs. SUTHERLAND, et al - 11-20129; 11-20066; 12-20387

```
 1              MR. DALY:  Craig Daly on behalf of Mr. Sutherland.
 2   Good afternoon.
 3              THE CLERK:  Defendant No. 2, Ronald Roberts?
 4              (No response.)
 5              THE COURT:  That's Mr. Tank who is being -- someone is
 6   standing in for Mr. Tank?  Is that correct?
 7              THE CLERK:  No, Judge.
 8              THE COURT:  Not correct.  Mr. Tank is not present.
 9              THE CLERK:  Defendant No. 3, David Roberts?
10              MR. DICKSTEIN:  Loren Dickstein on behalf of Mr.
11   Roberts.
12              THE CLERK:  Defendant No. 4, Patrick McKeoun?
13              MR. ROBERT MORGAN:  Robert Morgan, standing in for
14   Sidney Kraizman, your Honor.
15              THE CLERK:  Defendant No. 5, Jeff Garvin Smith.
16              MR. SABBOTA:  May it please the Court, Jerome Sabbota
17   on behalf of Jeff Smith relative to both cases, Judge.
18              THE CLERK:  Defendant No. 6, Paul Darrah?
19              MR. MACERONI:  Patricia Maceroni on behalf of Mr.
20   Darrah.
21              THE CLERK:  Defendant No. 7, Cary Vandiver?
22              MR. SATAWA:  May it please the Court, your Honor.
23   Mark Satawa on behalf of Mr. Vandiver, as it relates to both
24   cases.
25              THE CLERK:  Defendant No. 8, Vincent Witort?
```

STATUS CONFERENCE - 8/22/2012

```
 1            MS. STOUT:  Kimberly Stout on behalf of Mr. Witort.
 2            THE CLERK:  Defendant No. 9, Michael Mastromatteo?
 3            MR. SEIKALY:  Good afternoon, your Honor.  Christopher
 4    Seikaly on behalf of Mr. Mastromatteo on both cases.
 5            THE CLERK:  Defendant No. 10, Vernon Rich?
 6            MR. MATEO:  Good afternoon, your Honor.  Juan Mateo
 7    appearing on behalf of Mr. Rich.
 8            THE CLERK:  Defendant No. 11, John Riede?
 9            That's Mr. Lustig.
10            THE COURT:  Mr. Lustig has not appeared.  All right.
11            MR. STEINGOLD:  Your Honor, I'll stand in for the
12    purpose of Mr. Lustig.  David Steingold standing in for Mr.
13    Lustig.
14            THE COURT:  Thank you, Mr. Steingold.
15            THE CLERK:  Defendant No. 12, Victor Castano?
16            MR. STEINGOLD:  David Steingold on behalf of Mr.
17    Castano.
18            THE CLERK:  Number 13, Gary Lee Nelson?
19            MR. CHURIKIAN:  Good afternoon, your Honor.  Samuel
20    Churikian appearing on behalf of Mr. Nelson.
21            THE CLERK:  Number 14, Michael Rich.
22            MR. ROBERT MORGAN:  Robert Morgan on behalf of Michael
23    Rich on both files, your Honor.
24            THE CLERK:  Defendant No. 15, Raymond Melioli?
25            MR. BEAVERS:  Good afternoon, your Honor.  Claude
```

STATUS CONFERENCE - 8/22/2012

1    Beavers on behalf of Brandon Melioli.

2         THE CLERK:  Number 16, Timothy Downs?

3         MR. NISKAR:  Good afternoon.  Joseph Niskar on behalf

4    of Mr. Downs.

5         THE CLERK:  Defendant No. 17, David Drozdowski?

6         MR. MACHASIC:  Good afternoon, your Honor.  Ryan

7    Machasic on behalf of Mr. Drozdowski.

8         THE CLERK:  Number 18, Smiley Villa?

9         MR. RICHARD MORGAN:  Richard H. Morgan on behalf of

10   Mr. Smiley in both cases, your Honor.

11        THE CLERK:  Number 19, Dean Jakiel?

12        MR. WEISS:  Good afternoon, your Honor.  Arthur Weiss

13   on behalf of Mr. Jakiel in both prosecutions.

14        THE CLERK:  Number 20, Tony Kitchens?

15        MR. JAKUC:  Your Honor, good afternoon.  Tom Jakuc

16   appearing on behalf of Mr. Kitchens.

17        THE CLERK:  Number 21, Sylvester Wesaw?

18        MR. CRIPPS:  Good afternoon, your Honor.  David Cripps

19   on behalf of Mr. Sylvester Wesaw.

20        THE CLERK:  Number 22, Ronald Preletz?

21        MR. SWOR:  Good afternoon, your Honor.  William Swor

22   on behalf of Mr. Preletz.

23        THE CLERK:  Number 23, Howard Quant?

24        MR. MCCARTHY:  Good afternoon, your Honor.  Michael

25   McCarthy appearing on behalf of Howard Joseph Quant.

1          THE CLERK:  Number 24, Scott Perkins?

2          MR. SWOR:  Your Honor, William Swor standing in for

3   Margaret Raben, for Mr. Perkins.

4          THE CLERK:  Number 25, Clifford Rhodes?

5          MR. BURDICK:  Your Honor, James W. Burdick appearing

6   on behalf of Mr. Rhodes, and on behalf of his counsel, Edward

7   Wishnow.  And Mr. Rhodes has filed a waiver of the presence of

8   his counsel.  I'll also stand in for Mr. Tank and give him the

9   information, if it please the Court.

10         THE COURT:  Thank you, Mr. Burdick.

11         THE CLERK:  Number 26, David Delong?

12         MR. KEILLOR:  Scott Keillor.  I'm standing in for Don

13  Farris on behalf of David Delong.

14         THE CLERK:  Number 27, Christopher Cook?

15         MR. BUTLER:  May it please the Court, Jeffrey Butler

16  representing Christopher Cook.

17         THE CLERK:  Number 28, Mike Palazzola?

18         MR. GLEESON:  Good afternoon, your Honor.  Gerald

19  Gleeson appearing on behalf of Mr. Palazzola.

20         THE COURT:  Number 29, Danny Burby, Jr.?

21         MR. RATAJ:  Good afternoon, your Honor.  Mike Rataj on

22  behalf of Mr. Burby.

23         THE CLERK:  Number 30, Ronald Lambert?

24         MR. WARSHAW:  Thomas Warshaw on behalf of Mr. Lambert.

25         THE CLERK:  Number 31, Jason Cook?

 1            MR. KEILLOR:  Scott Keillor on behalf of Jason Cook,

 2   your Honor.

 3            THE CLERK:  Number 32, Edward Taylor?

 4            MR. VENDITELLI:  Good afternoon, your Honor.  Nicholas

 5   Venditelli on behalf of Mr. Taylor on both cases.

 6            THE CLERK:  Number 33, Salvatore Battaglia?

 7            MR. FEINBERG:  James L. Feinberg for Mr. Battaglia.

 8            THE CLERK:  Number 34, William Lonsby?

 9            MR. KINNEY:  Good afternoon, your Honor.  Robert

10   Kinney appearing on behalf of Mr. Lonsby.

11            THE CLERK:  Number 35, Wayne Werth?

12            MS. MORGAN:  Joan Morgan on behalf of Mr. Werth.

13            THE CLERK:  Number 36, Lauri Ledford?

14            MR. POOKRUM:  Walter Pookrum on behalf of Ms. Ledford.

15            THE CLERK:  Number 37, Jennifer Cicola?

16            MR. GONEK:  Good afternoon, your Honor.  Ben Gonek on

17   behalf of Jennifer Cicola.

18            THE CLERK:  Number 38, Dean Tagliavia?

19            MR. BURDICK:  Your Honor, James W. Burdick appearing

20   on behalf of Mr. Tagliavia.

21            THE CLERK:  Number 39, Alexis May?

22            MR. CHURIKIAN:  Your Honor, Samuel Churikian standing

23   in for attorney of record, Mr. Mark Magidson.

24            THE CLERK:  Number 40, Paula Friscioni?

25            MR. MCMANUS:  John McManus on behalf of Ms. Friscioni.

STATUS CONFERENCE - 8/22/2012

1       THE CLERK:  Number 41, John Scudder?

2       MR. ARONE:  Good afternoon, your Honor.  Joseph Arone

3  on behalf of Mr. Scudder.

4       THE CLERK:  And, Judge, we have one defendant, Mr.

5  Keith McFadden, who is a fugitive.

6       THE COURT:  Yes.  Defendant McFadden has not been

7  arraigned, as I understand it.

8       The Court recognizes Ms. Raben who has arrived just a

9  moment ago and is here on behalf of her client.  Mrs. Raben.

10      Are there any -- does that -- is that the group of

11  defendants on both cases?

12      THE CLERK:  Yes, Judge.

13      THE COURT:  Are there any defendant -- is anybody

14  aware of any defendant that we've missed?  Any un-cliented

15  representative here, in other words?

16      (No response.)

17      THE COURT:  I also want to note that Mr. Robert Ranz

18  is here from the Sixth Circuit.  I have the name correct, do I

19  not, sir?  Mr. Ranz, is that right?

20      MR. RANZ:  That's correct, Judge.

21      THE COURT:  He's the CJA coordinator.  There's a

22  title.  I'm not sure exactly.

23      Well, why don't you introduce yourself, Mr. Ranz,

24  rather than me doing it for you.

25      MR. RANZ:  Judge, I'm the case budgeting attorney for

```
 1    the Sixth Circuit.
 2              THE COURT:  Very good.  And as such, a specialist and
 3    an advisor to the Sixth Circuit for things such as the CJA
 4    budgeting and organization of the economic aspects of Criminal
 5    Justice Act appointments.
 6              And Mr. Ranz is here at the Court's invitation to meet
 7    with the CJA attorneys after we close the record on this
 8    initial orientation session to work on matters such as overall
 9    case budget, submission of bills, timelines, things of that
10    nature.  And I don't intend to supervise that meeting.  He'll
11    run that aspect of it.  So all CJA attorneys should expect to
12    remain and to discuss with Mr. Ranz the implications of this
13    case.
14              We are on the record for this orientation session,
15    although it is entirely -- there is nothing substantive that I
16    intend to do this afternoon, only organizational and procedural
17    with possibly some timelines, either estimated or suggested and
18    provisionally settled upon.
19              It is obvious that if the case were to go to trial, we
20    would not try 40 individuals, or 30, or 20 but probably not
21    more than about eight or ten at one time.  It would be helpful,
22    I think, to follow most, if not all of the model that was
23    established by Judge Edmunds in her recent series of numerous
24    defendant cases, one or more cases in which there were more
25    defendants, actually, than we have here.  And a number of you,
```

1    defense attorneys, were involved in the defense of that

2    litigation and are familiar with some of the procedures that

3    were used, and perhaps procedures that could be improved upon

4    as you might suggest.

5            From my discussion with other judges, Judge Edmunds

6    and others, my colleagues, it appears to be a sensible thing to

7    do to ask the Government at least to put the first proposal

8    forward in terms of subdividing, for organizational purposes,

9    the defendants into some sensible groupings.  There's a lot of

10   variability, I suppose, as to how that would be done.  But once

11   defendants may be broken down into reasonably manageable groups

12   of perhaps ten, then for each group, it has been helpful to

13   appoint or to have self-nominated a liaison counsel for that

14   group who would be expected to attend personally subsequent

15   procedural conferences, so that we don't have to meet with 50

16   attorneys, but only perhaps seven or eight, I suppose.  Maybe

17   not even that many.

18           Of course, anybody who is representing a defendant is

19   invited, and certainly has a right to attend such conferences.

20   But the obligation would be only upon the liaison counsel to,

21   to attend, and to discuss, and to try to arrive at whatever

22   goals are sought in that meeting.

23           I wonder if Government counsel has taken any steps in

24   the direction of subdivision, conceptual subdivision of the

25   group of defendants.

```
 1            Has any of that been done, Ms. Mohsin, thus far?  Or

 2   Mr. Straus?

 3            Who is going to be principal representative for the

 4   Government, at least today?  Ms. Mohsin?

 5            MS. MOHSIN:  I think so, your Honor.

 6            THE COURT:  Okay.

 7            MS. MOHSIN:  We have given some thought to it.  I

 8   guess initially we were considering that perhaps once sort of

 9   final pretrial conferences had passed or the time for sort of

10   Rule 11's have passed, that for the purposes of trial, we would

11   be in a better position to assess who ought to be tried in

12   those groupings.  However, based upon the Court's request that

13   we create essentially four groups of ten, there are 41

14   defendants in this grouping, and one additional that has not

15   yet appeared, we could, we could certainly come up with

16   groupings fairly quickly to meet the Court's requirements for

17   the purposes of the liaison.

18            THE COURT:  All right.  Thank you.

19            It seems to me that that is a sensible first step.

20   The appointment of, or self-appointment, or a court appointment

21   of a liaison counsel within each group would be a next step.  A

22   subsequent conference with those liaison counsel in order to

23   try to put a timeline together.  There is likely to be

24   voluminous discovery.

25            I think that's the case.  Is that right, Ms. Mohsin?
```

```
 1              MS. MOHSIN:  It is, your Honor.
 2              THE COURT:  There is, I am aware, also in the
 3    Administrative Office of U.S. Courts a coordinating discovery
 4    attorney as a litigation support specialist, roughly equivalent
 5    I think to Mr. Ranz, but in terms of his employment, his or her
 6    employment within the court system, but who is tasked with the
 7    responsibility of attempting to manage large, large defendant
 8    cases and to avoid the unnecessary duplication of efforts in
 9    the provision of discovery.  It's a resource that I think
10    should be explored.  And that would be a topic for discussion,
11    I think, at a next meeting.
12              The topic also of motion practice needs to be
13    discussed and decided and organized.  I, I know from discussion
14    with colleagues and from my own experience in somewhat less
15    numerous defendant cases in the past, that untrammeled motion
16    practice can quickly spin out of control and deserves some
17    degree of organization for the benefit of the defendants, and
18    for at least the benefit of the Court in terms of attempting to
19    manage things appropriately and get decisions made in an
20    expeditious way.
21              So some discussion of organized, I dare say
22    regimented, in a certain sense, motion practice needs to be
23    discussed.  The outer boundaries of that, I don't know.  It's
24    just, it is a topic that I think needs to be addressed and
25    intelligently decided upon.
```

```
1         I would suggest that we have, as a first foray,
2    proffer from Government counsel within, I'd suggest by the end
3    of the week, frankly, as to a proposed subdivision, conceptual
4    subdivision of defendants.  And this is not designed to be
5    final for purposes of trial, imagining that these are going to
6    trial.  There can be a reorganization of defendants as we
7    approach trial.  There may be substantial reasons for that in
8    terms of countervailing prejudice, and so on and so forth.
9         Only for purposes of case management, subdivision of
10   defendants, two groups, four seems about right.  A selection of
11   liaison counsel for each group some time in the succeeding
12   week, I would suggest.  And then perhaps in the, some time in
13   the week beyond that, which would be about two and a half
14   weeks, or two, three weeks from now, a conference, a scheduling
15   and case management conference with that group of attorneys,
16   there having been some time that you all can think about it and
17   put some ideas together in terms of suggested timelines and
18   possibly the use of this, of the coordinating discovery
19   attorney from the Administrative Office.
20        Also, you will have an opportunity to talk with Mr.
21   Ranz, and to those of you who are CJA, which is the majority, I
22   think.  How many retained do we have here?  Hands?
23        A small minority.  The rest are CJA.  Well, that makes
24   it all the more important that Mr. Ranz is here.  Those are my
25   concepts.  And I, I invite reaction and/or suggestions.
```

 1              And Ms. Raben raises her hand first.

 2              MS. RABEN:  I do, your Honor.  My concern is that

 3     without having an idea of how much discovery there is, it's

 4     going to be difficult for any of the attorneys to get a handle

 5     on timelines, motion practice, that sort of thing.

 6              THE COURT:  So I hear you suggesting that Government

 7     counsel should, in addition to proposing some subdivision of

 8     defendants, should lay out some sort of an overall high

 9     altitude view of their idea of what sort of quantity of

10     discovery may be?

11              MS. RABEN:  I guess I'm really asking when we can

12     expect to get the discovery from the Government and whether

13     we're going to get it all at once or whether we're going to get

14     it piecemeal, or how the Government proposes to do this.

15              THE COURT:  You know, those sound like good agenda

16     items for a first case management discussion, actually.

17              MS. RABEN:  All right.

18              THE COURT:  I don't know that's something that I

19     would, unless Ms. Mohsin wants to set it forth now what the

20     Government's view is in that regard, which is fine.  But if

21     there's not -- if she's not prepared to do that at this

22     instant, it --

23              MS. RABEN:  Your Honor --

24              THE COURT:  It sounds like it's an important item to

25     discuss I think at that meeting.

 1            MS. RABEN:  I don't know -- excuse me.  I don't know

 2     if anyone has any discovery on this case yet.

 3            THE COURT:  I don't know.  Ms. Mohsin, what's your

 4     view about discovery at this juncture?

 5            MS. MOHSIN:  Judge, I know that we're going to be more

 6     than adequately prepared to meet and discuss the issues of

 7     discovery.  There are some issues.

 8            First and foremost, there are some motions the

 9     Government intends to, to file in that regard, specifically

10     relating to protective orders in the dissemination of the

11     discovery.  We had hoped to get through this initial

12     preliminary meeting with the Court, with the attorneys, to

13     understand sort of the parameters.

14            THE COURT:  Can you all hear her in the back?

15            COUNSEL:  Yes.

16            THE COURT:  Yes?  Okay.  You can use either one.  The

17     one on the table is live, too.

18            MS. MOHSIN:  We want to get sort of the lay of the

19     land from the Court initially.  We have already had extensive

20     discussions and, and have begun drafting some discovery related

21     motions, protective order related motions, as well as a

22     designation of a complex case under the Speedy Trial Act.

23     We've deferred filing of those motions, partially because of

24     the conference that was scheduled for today, and also because

25     of some of the concurrence related issues that we're going to

STATUS CONFERENCE - 8/22/2012

1    be facing.

2          So we're, we're prepared to represent today that the

3    discovery is quite voluminous and that we've given it a lot of

4    thought how to do that.  But until that protective order issue

5    is resolved, I don't know that we can answer all of the

6    defense's questions about timing.

7          THE COURT:  Within two weeks' time or so, you should,

8    I would think, be able to do that.  Wouldn't you?

9          MS. MOHSIN:  I think that's correct, Judge.

10         THE COURT:  And when do you expect to file a

11   protective order motion?

12         MS. MOHSIN:  Well, we have one prepared and we can

13   file it shortly after this meeting by the end of the week.

14   We've, we've prepared that motion already.

15         THE COURT:  Are you --

16         MS. MOHSIN:  But concurrence is sort of -- you know,

17   there are 41 defendants.  The court rule requires that we

18   obtain concurrence.  And the last motion we filed, just from

19   the procedural point of view, we had so many responses filed.

20         THE COURT:  Tell me what the substance may be of the

21   relief sought in the protective order.

22         MS. MOHSIN:  A protective order covering sealed search

23   warrants, a separate protective order covering wiretaps of

24   which there are more than one in this case, and other

25   materials.

STATUS CONFERENCE - 8/22/2012

1      THE COURT:  And so the protective order would be aimed

2   at the protection of the materials to be produced and would

3   limit it in what way?

4      MS. MOHSIN:  The proposed protective order is to limit

5   it to defense counsel and their clients, but that no further

6   dissemination be permitted, absent authorization from the

7   Court.

8      THE COURT:  And this would include wiretap, what,

9   transcripts?

10      MS. MOHSIN:  No.  Wiretap calls.  It would cover

11   essentially all of the discovery material for the reasons we

12   will have laid out for the Court and for the parties.

13      THE COURT:  Have you obtained concurrence from some

14   that you've contacted, some defendants?

15      MS. MOHSIN:  I have not, your Honor.  And just by way

16   of example, we had filed a motion for sort of a consolidation.

17   We didn't file it for seven days.  We waited for attorneys to

18   contact us to indicate whether they concurred or not.  We only

19   heard from 7 people out of 41, so.

20      THE COURT:  They were all concurrences, weren't they?

21      MS. MOHSIN:  Well, subsequently the filings were.  So

22   I was looking for some guidance from the Court too, about how

23   we're going to handle some of those issues.

24      THE COURT:  I have -- okay.  Let me ask you just to

25   stand down for a second.

1          At the threshold, understanding that there's a
2  proposal to limit at least now the dissemination of discovery
3  material to attorney and client, and that would include, Ms.
4  Mohsin, paralegal assistance within the attorney or attorney
5  office personnel; would that be correct?
6          MS. MOHSIN:  Certainly, your Honor.
7          THE COURT:  Okay.  So attorney, which means not just
8  one person, but the attorney team and client.
9          Is there any amongst the defense team who knows that
10 he or she would not concur in that, in such a motion?
11         MR. DICKSTEIN:  Judge, on behalf of David Roberts --
12         THE COURT:  You don't need to say who you are.
13 Several of you have stood up.  All right.  So the motion will
14 have to be filed.
15         All right.  So there's not -- so I'm imagining, of
16 course, there might be just silence and general concurrence,
17 which would perhaps make it a little bit easier.
18         But you go ahead and file the motion, Ms. Mohsin.
19         MS. MOHSIN:  Thank you, your Honor.
20         THE COURT:  You know it's not going to be roundly
21 concurred in, and that's the same as having it opposed.  So we
22 shall see what the opposition says.  All right.
23         MR. RICHARD MORGAN:  Your Honor?
24         THE COURT:  Yes, Mr. Morgan?
25         MR. RICHARD MORGAN:  She never answered the question.

1    She should be able to tell us there's 3,000 wiretapped phone

2    calls, there's 10,000 pages of discovery.  I think we should

3    have some idea of what the discovery is before we begin to do

4    anything in terms of where we're going with this case.  And she

5    knows better than we do, because they have it all and they know

6    how many pages there are, and how many wiretaps there are.

7              THE COURT:  Can you --

8              MR. RICHARD MORGAN:  And to suggest we need to be --

9    to limit to say I don't want to give X, Y and Z phone calls

10   because they -- we don't know what they are until we hear them

11   all.  So how can we make a decision of who we agree to what, to

12   a protective order in terms of discussing something with

13   another brother counsel?

14             THE COURT:  I'm not sure that discussing something

15   with brother counsel would be -- if there's a joint defense

16   arrangement of some kind, I'm not sure that would be --

17             MR. RICHARD MORGAN:  What she suggested --

18             THE COURT:  -- appropriate.

19             MR. RICHARD MORGAN:  -- limit it to our offices,

20   basically, and our clients.

21             THE COURT:  I don't know that there would be any -- I

22   don't know.  I'm going to wait for the motion and see.

23             But in terms of numerosity, is there any way to put,

24   to put any sort, or quantification, is there any way to roughly

25   estimate the number of wiretaps or pages of transcript, if

1    there are transcripts?  I would imagine that some wiretaps have

2    been transcribed, not all.

3            MS. MOHSIN:  Judge, there are nine months of wiretap

4    calls of two separate phones.  There are over 50 search

5    warrants with affidavits and evidence that was seized.  So, of

6    course, that would include documents, photographs and related

7    materials.  There are in the ballpark of 10,000 documents that

8    have been generated, which would include police reports, old

9    case related documents, lab reports, things of that nature.

10           I think, giving the Court an approximation, those are

11   the sort of numbers that we're talking about.

12           THE COURT:  Nine months of wiretap material translates

13   to how many hours of significant hours, let's say, of

14   conversations?

15           MS. MOHSIN:  I don't know the answer, Judge.  But I

16   can tell you that seven months for -- were for calls over one

17   telephone; two months were for calls over another.  I don't

18   know how many hours that would entail.

19           We are planning to provide, you know, call numbers for

20   counsel to look at related to certain overt acts or acts that

21   are referenced in the indictment so that there is guidance as

22   to which calls to focus on and how they relate to particular

23   overt acts.

24           THE COURT:  Right.  Thank you.

25           MR. WEISS:  Your Honor, if I may inquire?

STATUS CONFERENCE - 8/22/2012

```
1              THE COURT:  Mr. Weiss?
2              MR. WEISS:  I would like, if the Court could tell us
3    what its policy is.  If one defendant files an answer to a
4    motion, or files a motion, do you want concurrences from
5    everyone who is --
6              THE COURT:  I think what I would, I would think it
7    would be more -- the short answer is no.  I don't want 41
8    concurrences.  I actually don't even want any motions.
9              (Laughter in the courtroom.)
10             THE COURT:  At least not yet.  That's one of the
11   things I want to talk about in a couple of weeks.
12             No.  More likely, Mr. Weiss, I think an opt-out would
13   be more practical, as a matter of fact.
14             If you don't want, want the -- for some reason you
15   want to not either bear the burden or receive the benefit of
16   whatever this motion is, let me know and you'll be considered
17   opted out, but the default would be opt in.  I think that that
18   would be the right way to do, to do it here.
19             And, Mr. Swor?
20             MR. SWOR:  Your Honor, may we know whether there are
21   any computer hard drives, disks or computers in general that
22   we're going to have to deal with?
23             THE COURT:  How many search warrants were there?  40?
24   50?
25             MS. MOHSIN:  Well, 50 search warrants largely --
```

UNITED STATES vs. SUTHERLAND, et al - 11-20129; 11-20066; 12-20387

 1              THE COURT:  Had to be at least one computer.

 2              MS. MOHSIN:  Yeah.  But largely the evidence is of,

 3  you know, physical evidence, documents, things along those

 4  lines.  I know that I can't think of sort of that large scale

 5  computer-type evidence at this point.  I would have to spend --

 6              THE COURT:  When you get into issues like mirroring

 7  hard drives and analyzing them and getting into terabytes, such

 8  as I have on another case, yeah, it doesn't sound like it, Mr.

 9  Swor, at least nothing significant.

10              MR. SWOR:  Because it will become a case management

11  issue.

12              THE COURT:  Sure.

13              MR. SWOR:  Later.

14              THE COURT:  Sure.  I understand.  It sounds like this

15  is not oriented along those lines.

16              MR. SWOR:  Good.

17              THE COURT:  Right.  Any other suggestions, comments,

18  questions that from, especially from the defense bar that we

19  might consider altering that general schedule that I just laid

20  out?

21              (No response.)

22              THE COURT:  I think it would be good to have the

23  proposed subdivision of defendants into I think four groups of

24  about 10 each.  That sounds manageable to me.

25              It probably would be a good idea to give you all an

1    opportunity to react, as well as the responsibility of

2    selecting a "first among equals" in each group to act as a

3    liaison.

4           Again, I'm not foreclosing the opportunity of anybody

5    who is representing a defendant attend these meetings, but my

6    expectation is it's simply not going to be fruitful or

7    certainly not very economical to have 40 people just sort of

8    sitting there and not participating.

9           Yes, Mr. Keillor?

10          MR. KEILLOR:  Keillor.  Yes.  Thank you, your Honor.

11   I was just asking if I could ask Ms. Mohsin, too, when we get

12   documentary discovery, sometimes it's very easy if we can go

13   through it if it's OCR, optical character recognition so we can

14   do searches on it.  I mean, smaller volume cases I can do it

15   myself, but for I'm looking at 10,000 pages, it would be easier

16   to have the Government provide if it's already OCR.

17          THE COURT:  Yeah.  That, to me, sounds like one more,

18   a good agenda item for our initial management discussion.  I

19   understand what you mean.

20          MR. KEILLOR:  Yeah.

21          THE COURT:  It is a sensible concept.  Whether,

22   whether the materials that are in hand now are even suitable

23   for that sort of OCR, I don't know what it's called, the

24   translation or a capture and processing, but it's, it's a

25   sensible question.

STATUS CONFERENCE - 8/22/2012                                    28

1           Any other suggestions?  Do you know what I'll do is

2    also call for, I'll call for other items, other agenda items.

3    Ms. Raben, Mr. Keillor, both have good ideas.  Government have

4    some good ideas also.

5           And, Mr. Ranz, do you know anything about the

6    coordinating discovery attorney?  Is that, is that something

7    within your experience?

8           MR. RANZ:  Judge, the only thing I know is there's

9    only three of them in the country right now, and they basically

10   pick and choose their cases.

11          THE COURT:  A case as small as this might not attract

12   their --

13          MR. RANZ:  I'm not sure.  I think this case might be.

14   You know, usually it's always the multi-defendant, heavy

15   discovery cases.  And I think if the approach is made through

16   Sean Broderick, who is the National Litigation Support

17   Administrator, I think there would be a chance they might jump

18   into this.

19          THE COURT:  And would that be an approach that you'd

20   suggest that the Court make?

21          MR. RANZ:  I've only seen one in the circuit so far,

22   Judge.  And actually, the Federal Defenders Office filed a

23   motion in that case.  I think the Court can make the approach.

24   In fact, you might have a little more clout, shall we say.

25          THE COURT:  Oh, I don't, I don't think so.  I don't

STATUS CONFERENCE - 8/22/2012

1     think that's the case, but I would be happy to do it.

2          Mr. Swor, do you have some experience in that regard?

3          MR. SWOR:  I have some thoughts on it.  Mr. Ranz and I

4     started talking about this yesterday, and I have spoken with

5     the Federal Defenders.

6          I think this is something that we should address and

7     if, if in our CJA meeting, we can approach the Court, I think

8     there are some problems with it.

9          THE COURT:  Okay.  Well.

10         MR. SWOR:  Okay.

11         THE COURT:  So you'd like to discuss it in a sort of a

12    closed-door session with Mr. Ranz, and then interact with the

13    Court perhaps ex parte?

14         MR. SWOR:  The problem, the problem that I see is

15    there is, there's a significant -- English.  There is a

16    significant amount of potential conflict in this case among the

17    defendants, and the process may not work, given the degree of

18    conflict.  And we've only started that discussion.

19         THE COURT:  Would that be -- would that topic be one

20    that should be considered when we are subdividing defendants

21    for case management purposes?  Sounds sensible to me.

22         MR. SWOR:  It may.

23         THE COURT:  So do you think that perhaps defense,

24    defense group should have a shot at, at suggesting an amendment

25    of the Government's proposed subdivision into groups?

1              MR. SWOR:  I presume that --

2              THE COURT:  Shuffling people around from group A to

3    group B and so forth?

4              MR. SWOR:  I presume that when the Government made its

5    preliminary disclosure, that there would be -- and the Court

6    suggested a response time -- that there would be some time for

7    discussion, reflection and analysis.

8              THE COURT:  Yeah.  Okay.  Good.

9              Mister -- yes, go ahead.

10             MR. FEINBERG:  Mr. Feinberg.

11             THE COURT:  Mr. Feinberg.

12             MR. FEINBERG:  I think another problem is a number of

13   people are incarcerated.  And if there's going to be four

14   different tiers in the trial, the four trials could be extended

15   for, you know, years like the, the Highwaymen case did.  There

16   may be a problem as far as people being detained.

17             THE COURT:  Right.  It's, I think in the category of a

18   bridge that we should cross when we get to it.  We're not there

19   yet.

20             And that, again, I'm not conceiving of these groups

21   being necessarily cemented into place for trial purposes.  It

22   seems to me if trial will, trial will almost certainly become

23   necessary in some measure here.  But as trial approaches, we

24   can see where we are, how many defendants are still ready for

25   trial, need a trial and so forth, decide what the groupings

1   look like as we approach trial.  And I think that detention

2   status is one of those factors, fairly stated.

3           So other ideas or suggestions?

4           (No response.)

5           THE COURT:  None.  Okay.  Thank you for being here.  I

6   appreciate that.  And I will organize some sort of a schedule

7   that, as Mr. Swor suggests, allows for some period of

8   reflection, actually calls for ideas for agenda items for our

9   -- for a first status case management conference.

10           And Lisa could give us some suggested dates.

11           Any problem filing, Ms. Mohsin, as opposed to just

12  lodging with Court and circulating with counsel for all

13  counsel, just file a suggested -- a memorandum, something

14  called perhaps a memorandum of suggested case management

15  subdivision, something similar to that?

16           MS. MOHSIN:  Yes.  We will file that, your Honor.

17           THE COURT:  All right.  Good.  And do you think you

18  can do that by Friday?

19           MS. MOHSIN:  Yes.

20           THE COURT:  All right.

21           MR. SWOR:  Your Honor, I apologize.  But in the realm

22  of long-term planning, a number of us in this room are

23  scheduled for trial in Judge Goldsmith's court in Flint in

24  October of 2013.  So when the Court prepares its schedule, just

25  a heads-up.

```
 1              THE COURT:  Mr. Swor has just suggested another,
 2   another agenda item for the case management conference.
 3              (Laughter in courtroom.)
 4              THE COURT:  So if you can get that in by Friday, we
 5   can expect a response, responsive -- an opportunity for
 6   response a week downstream by the following Friday, if you
 7   please.  Silence is fine.  But if you have something
 8   substantive to suggest, let us fold it into my decision.  But I
 9   will make a decision on, on this kind of subdivision.  And then
10   also a suggestion, let's see, a suggestion about who your
11   liaison counsel should be among each of those groups.
12              (Brief pause.)
13              THE COURT:  Lisa is looking at September 10th in the
14   morning for the case management conference.  I'm not sure
15   exactly when.  It might be early, could be a little bit later.
16   Again, I'm only thinking about Government counsel, plus four
17   more, one from each group.
18              So let me put together an order that gets some dates
19   on this, expecting the Government to file by, its suggested
20   subdivision by the end of this week.  And by the end of the
21   week following, which would be the 31st of August, it would be
22   that opportunity for reaction by Defense Counsel, combined with
23   an opportunity to suggest agenda items for case management
24   discussion, combined also with a suggestion at that same time,
25   31st of August, suggestion for liaison counsel within each
```

STATUS CONFERENCE - 8/22/2012

1    group, one liaison counsel from each group, on the assumption
2    that the group stays as proposed by the Government.
3            Now, if something changes, well, then it's subject to
4    change, I suppose.  But on the assumption that I agree with or
5    confirm the Government's suggested subdivision, whom do you
6    suggest, and I would hope that it would be a unanimous
7    group-by-group appraisal.  But if not, I will say this, and
8    this is a suggestion from another colleague, from Judge Cohn.
9    He suggested to me that, well, if they can't agree, then you
10   just appoint somebody.  So that sounds like a sensible way of
11   doing it to me.
12           Mr. Feinberg?
13           MR. FEINBERG:  Could we have a couple dates beyond a
14   week from Friday?
15           THE COURT:  Sure.
16           MR. FEINBERG:  Because I'm going to be at the U.S.
17   Open.
18           THE COURT:  How about -- is that tennis?  That's not
19   golf.
20           MR. FEINBERG:  That's tennis.  I'm not old enough for
21   golf yet.
22           THE COURT:  The 3rd is Labor Day, isn't it?  And then
23   the 4th.  We've got the 4th.  How about the 4th?
24           MR. FEINBERG:  Thank you, Judge.
25           THE COURT:  Is that okay with everyone?  Earlier is

```
 1   fine as well.
 2            Let's shoot for that.  The 4th for reaction.  And I
 3   think I should be able to fairly rapidly decide and file
 4   something that tells you.  And let's, let's say that we'll meet
 5   on the 10th for case management.  And we'll go through the
 6   agenda items, see if there's anything else we need to discuss,
 7   try to set some timelines, as I suggested and get going on the
 8   case.
 9            Anything else, Ms. Mohsin, you suggest for the
10   Government?
11            MS. MOHSIN:  Nothing further from the Government.
12            THE COURT:  Anybody else have any other lingering
13   issues or suggestions?
14            (No response.)
15            THE COURT:  All right.  Thank you, again, for being
16   here.  We'll close the record at this point.
17            And then also, is there anything administrative?  Our
18   case management specialists here are Andrea and Kim.  Is there
19   anything you would suggest for us.
20            MS. GRIMES:  We'll talk about consolidation later.
21            THE COURT:  Consolidation.  Yeah.  Okay.  Very good.
22   There's a suggestion.  Yeah.  It's, well, let me extend the
23   record a little bit.
24            You remind me that there is a pending motion, you
25   mentioned this also, Ms. Mohsin, in terms of consolidation of
```

```
 1   the two, or is it three now, cases that have the same or
 2   similar defendants, right?
 3           For actual consolidation for trial purposes is
 4   something that the docketing system cannot accommodate.  It's
 5   also something that may pose -- that may generate objections,
 6   perhaps I think already has actually, at least from one
 7   defendant.  So again, it's I think in that category of cross
 8   the bridge when we get to it, later on, probably much later on.
 9   But it makes sense for case management purposes, for discovery
10   organization, for attorney coordination, for expense mitigation
11   and so forth, to coordinate it, at least on an informal basis.
12           So consolidation may not be quite the right term, but
13   coordination I think is more like it.  And I think that, to the
14   extent that was a big part of your suggested -- of the
15   suggestion in your motion, then I'm in agreement with it.
16           Does that about capture what you were going to say,
17   Kim?
18           MS. GRIMES:  Yes, it does.
19           THE COURT:  Okay.  Good.  In order to actually
20   consolidate probably would require an amendment to the, like a
21   superseding indictment, or if it were by well-rounded
22   agreement, perhaps some sort of a judicially-ordered amendment,
23   something along those lines.  But again, I don't think we're
24   there yet.  So let's reserve that ultimate question for a time
25   closer to trial.
```

```
 1            All right.  We'll close the record.  And we'll turn
 2    the courtroom then over to -- we'll turn the microphone system
 3    off and leave the CJA attorneys here with Mr. Ranz, and for
 4    consultation.  And others may depart.  And thank you again for
 5    your time this afternoon.
 6            THE CLERK:  All rise.  Court is adjourned.
 7            (Proceedings adjourned at 2:47 p.m.)
 8                      *        *        *
 9
10                    CERTIFICATE OF REPORTER
11            As an official court reporter for the United States
12    District Court, appointed pursuant to provisions of Title 28,
13    United States Code, Section 753, I do hereby certify that the
14    foregoing is a correct transcript of the proceedings in the
15    above-entitled cause on the date hereinbefore set forth.
16
17
18             s/ Christin E. Russell
19           CHRISTIN E. RUSSELL, RPR, CRR, FCRR, CSR
20              Federal Official Court Reporter
21
22
23
24
25
```