UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

                    Case No. 11-20129

        *Plaintiff*,

                    HON.  ROBERT H. CLELAND

      v.

D-1   SCOTT WILLIAM SUTHERLAND
        a/k/a "Scotty Z"

        *Defendant*.
_____/

## GOVERNMENT'S RESPONSE AND BRIEF OPPOSING MOTION TO STRIKE SURPLUSAGE

NOW COMES the United States of America, by and through its attorneys, BARBARA L. McQUADE, United States Attorney, SAIMA S. MOHSIN and ERIC M. STRAUS, Assistant United States Attorneys for the Eastern District of Michigan, and JEROME M. MAIATICO, Trial Attorney for the U.S. Department of Justice, and hereby responds to the Motion to Strike Surplusage by Defendant SCOTT WILLIAM SUTHERLAND (R. 756) as follows:

1.    SUTHERLAND was charged in a single-count Indictment, Criminal No. 11-20129, on March 10, 2011, with Felon in Possession of Firearms and

1

Ammunition, in violation of 18 U.S.C. § 922(g)(1).  (R.3: Indictment.)  He was charged in a First Superseding Indictment on May 5, 2011, in Count 1: Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(1). (R.14: First Superseding Indictment.)  He appeared before this Court on October 4, 2011, and entered a plea of guilty to Count 1 of the First Superseding Indictment. (R.25: Plea Agreement.)

2.      SUTHERLAND was charged in a Third Superseding Indictment on June 13, 2012, in Count 1: Racketeer Influenced Corrupt Organizations – Conspiracy, in violation of 18 U.S.C. §1962(d), and Count 3: Conspiracy to Manufacture, Distribute, and Possess With Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  (R.72: Third Superseding Indictment.)

3.      The government alleges that SUTHERLAND is a member of the Devil's Diciples Motorcycle Club (DDMC), a violent racketeering enterprise. (R. 72 at pp. 3-50.)

4.      The government further alleges that one purpose of the DDMC enterprise was to:

> Protect the DDMC and its members from detection and prosecution
> by law enforcement authorities through acts of intimidation and
> violence against potential witnesses to crimes committed by the

DDMC, and obstructing justice through the making of false
statements, committing perjury and subornation of perjury.

(R. 72 at pp. 10-11.)

5.      SUTTHERLAND moves to strike as surplusage references to law

enforcement reports relating him that are contained in the following overt acts in

the Third Superseding Indictment:

> 65. On February 19, 2004 (now deceased) DDMC member Timothy
> Anjoski maintained and possessed two handguns, letters from
> defendant SCOTT WILLIAM SUTHERLAND, and ATF/FBI
> reports/documents regarding SUTHERLAND'S prior federal firearm
> prosecution, all at his home in Canton, Michigan.
>
> 66. On February 19, 2004 (now deceased) DDMC member Kenneth
> Roll maintained police reports regarding a double murder involving
> defendant SCOTT WILLIAM SUTHERLAND, newspaper articles
> regarding DDMC prosecutions, a letter to DDMC members requesting
> a $100 contribution to JEFF GARVIN SMITH.

(R. 72 at pp. 25.)

6.      Nine defendants joined this motion by SUTHERLAND by filing

notices of joinder, including Defendants CARY VANDIVER (R. 797), VINCENT

WITORT (R. 797), MICHAEL MASTROMATTEO (R. 782), VERNON RICH

(R. 782), JOHN RIEDE (R. 775), VICTOR CASTANO (R. 797), TIMOTHY

DOWNS (R. 775), DEAN JAKIEL (R. 782), and TONY KITCHENS (R. 834).

These notices do not contain any additional facts or argument.  The government's

instant response addresses the issues raised by SUTHERLAND and applies to all

joined defendants to the extent applicable.  Should any of these defendants later raise additional facts or arguments in support of their joinders, the government asks for a reasonable opportunity to respond at that time.

7.      The two allegations containing references to possession of SUTHERLAND's law enforcement reports are not surplusage because they are directly relevant to the RICO Conspiracy, 18 U.S.C. § 1962(d), and serve to prove elements that are necessary for conviction, including the existence of the DDMC's criminal enterprise, SUTHERLAND's association with the DDMC, and predicate racketeering acts such as witness intimidation, witness tampering, and obstruction of justice.  The government intends to prove that DDMC members regularly used such reports for nefarious reasons – such as identifying possible witnesses to crimes committed by DDMC members and obstructing justice – in order to achieve the DDMC's purpose of evading detection and prosecution.  Because of the direct relevance of these allegations, any possible prejudice resulting from their inclusion in the indictment is not unfairly prejudicial and, nevertheless, can be resolved by a limiting instruction from the Court.

8.      The government respectfully submits that a hearing is not necessary on this motion.  There are no novel legal or factual issues, no witnesses would be

expected to testify at a hearing regarding any facts contained in this motion, and a

hearing likely would not aid the Court in reaching its decision.

     9.     Accordingly, Defendant SUTHERLAND's motion should be denied.

## BRIEF IN SUPPORT

I.   **DEFENDANT'S MOTION TO STRIKE SURPLUSAGE SHOULD BE DENIED BECAUSE DEFENDANT FAILS TO SHOW THAT THE REFERENCES TO LAW ENFORCEMENT REPORTS ARE IRRELEVANT AND UNFAIRLY PREJUDICIAL**

SUTHERLAND moves to strike two references in the Third Superseding Indictment to law enforcement reports that were possessed by other Devil's Diciples Motorcycle (DDMC) members and related to SUTHERLAND.  His motion should be denied because under the exacting standard of Rule 7(d), he fails to demonstrate that these references are irrelevant and unfairly prejudicial.  On the contrary, these references constitute overt acts in furtherance of the RICO conspiracy and are intrinsic to the charge.  That DDMC members possessed reports containing law enforcement-sensitive information related to other DDMC members is directly relevant to the elements of the RICO conspiracy.  The government intends to prove that DDMC members regularly used such reports for nefarious reasons – such as identifying possible witnesses to crimes committed by DDMC members and obstructing justice – in order to achieve the DDMC's purpose of evading detection and prosecution.  Because of the direct relevance of these allegations, any possible prejudice resulting from their inclusion in the indictment is not unfairly prejudicial and, nevertheless, can be resolved by a

limiting instruction from the Court.  Therefore, SUTHERLAND's motion to strike

should be denied.

Rule 7(d) of the *Federal Rules of Criminal Procedure* states that "[u]pon the

defendant's motion, the court may strike surplusage from the indictment or

information."  Thus, the Rule "makes the striking of surplusage permissive but not

mandatory" and the decision whether to strike such language is within the sound

discretion of the district court.  *United States v. Kemper*, 503 F.2d 327, 329 (6th

Cir. 1974).  It properly applies only to allegations that are *both* nonessential and

prejudicial; prejudice alone does not render statements surplusage.  *Id*.  Language

in an indictment is unfairly prejudicial if it "serves only to inflame the jury,

confuse the issues, and blur the elements necessary for conviction."  *United States

v. Prejean,* 429 F.Supp.2d 782, 796 (E.D. La. 2006) (quoting *United States v.

Bullock,* 451 F.2d 884, 888 (5th Cir. 1971)).

Moreover, Rule 7(d) is strictly construed against striking surplusage.  *Id.*

Courts have ordered surplusage stricken only "rarely."  C. Wright, *Federal

Practice and Procedure* § 127 at 426-427.  An order to strike surplusage, then,

requires an "exacting" level of proof.  *Prejean*, 429 F. Supp. 2d at 796 (E.D. La.

2006) (quoting *Bullock,* 451 F.2d at 888).  Most significantly, "if the language in

the indictment is information which the government hopes to properly prove at

trial, it cannot be considered surplusage no matter how prejudicial it may be

(provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d

559, 562 n.2 (6th Cir. 1989); *see also United States v. Moss*, 9 F.3d 543, 550 (6th

Cir. 1993).

**A.      The Allegations Are Directly Relevant to the RICO Conspiracy**

The two allegations containing references to possession of

SUTHERLAND's law enforcement reports are not surplusage because they are

directly relevant to the RICO Conspiracy, 18 U.S.C. § 1962(d), and serve to prove

elements that are necessary for conviction, including the existence of the DDMC's

criminal enterprise, SUTHERLAND's association with the DDMC, and predicate

racketeering acts.[1]  The indictment specifically alleges that the DDMC's pattern of

racketeering activity included violations of 18 U.S.C. § 1503 (obstruction of

---

[1]      The elements of Count One, RICO Conspiracy, are:

(1)    The existence of an enterprise or that an enterprise would exist;
(2)    The enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;
(3)    A conspirator was or would be employed by or associated with  the enterprise;
(4)    A conspirator did or would conduct or participate in, either directly or indirectly, the conduct of the affairs of the enterprise; and
(5)    A conspirator did or would knowingly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, a conspirator did or would commit at least two acts of racketeering activity.

justice), 18 U.S.C. § 1510 (obstruction of criminal investigations), 18 U.S.C. §

1512 (witness tampering), and 18 U.S.C. § 1513 (retaliating against a witness),

among others.  (R. 72 at p. 12.)

One of the primary purposes of the DDMC enterprise – in which

SUTHERLAND agreed to participate – was to protect its members from detection

and prosecution by law enforcement.  (R. 72 at pp. 10-11.)  The government

intends to prove that DDMC members agreed to obtain and share law enforcement

reports, like the reports related to SUTHERLAND, as well as legal documents,

discovery, and articles relating to criminal cases involving DDMC members.  (*See,*

*e.g.,* R. 72, Count One, Overt Acts at ¶¶ 63, 65-67, 79, 83, 180.)  The reports that

related to SUTHERLAND involved crimes that were being investigated by law

enforcement during the time that SUTHERLAND was a DDMC member.  The

government intends to prove that DDMC members regularly used such reports for

nefarious reasons – such as identifying possible witnesses to crimes committed by

DDMC members and obstructing justice – in order to achieve the DDMC's

purpose of evading detection and prosecution.  DDMC members also monitored

the prosecutions of other members to assess whether the defendants cooperated and

became witnesses for the government.  Indeed, the charging documents in this case

are littered with instances where DDMC members intimidated, tampered with, and

committed acts of violence against possible witnesses.  (*See, e.g.,* R. 72, Count

One, Overt Acts at ¶¶ 7, 52, 71-72, 81-82, 84-87, 118, 184-85, Count Twenty-Six;

Case No. 11-20066, R. 3, Counts One through Five.) [2]

SUTHERLAND himself – after he became a DDMC member – assaulted

and threatened Person D, a DDMC member who testified at the double murder trial

referenced in paragraph 66 (R. 72, Count One, Overt Acts at ¶ 66) and implicated

SUTHERLAND in his testimony.  The indictment charges that SUTHERLAND

assaulted Person D, seized his motorcycle, and sent him a threatening letter.  (R.

72, Count One, Overt Acts at ¶¶ 38-40, 48.)   The government intends to prove that

SUTHERLAND threatened Person D in order to discourage Person D's

cooperation with the government and to retaliate against him. [3]

---

[2]      The allegations clearly state that DDMC members were in possession
of "reports" of crimes involving SUTHERLAND, and a generic description of
those crimes – "federal firearm prosecution" and "double murder" – is provided in
each overt act.  (R. 72, Count One, Overt Acts at ¶¶ 65-66.)  A general description
of these reports is necessary to provide context and demonstrate why other DDMC
members would be interested in possessing them.  The indictment makes no
reference to the arguably prejudicial facts of those crimes, like SUTHERLAND
does in his motion when he describes the "shooting of a young boy."  (R. 756 at p.
5.)  Moreover, even if one of the crimes occurred before Defendant Sutherland
became a DDMC member, as he suggests, it is relevant because the investigation
of that crime occurred while he was a DDMC member.

[3]      The government intends to prove that sometime in or around 1999,
SUTHERLAND became a patched member of the DDMC.   In approximately
2001, Person D began cooperating with law enforcement and provided information

All of these allegations support elements of the RICO conspiracy, and the government intends to offer evidence to properly prove them at trial. Therefore, the allegations containing references to SUTHERLAND's law enforcement reports, even if prejudicial in some way, cannot be considered surplusage and should not be stricken. *See Kemper*, 503 F.2d at 329; *Thomas*, 875 F.2d at 562 n.2; *Moss*, 9 F.3d at 550.

## B.    The Allegations Are Not Unfairly Prejudicial

Because of the direct relevance of these allegations, any possible prejudice resulting from their inclusion in the indictment is not *unfairly* prejudicial. *See id.* Nevertheless, this risk of prejudice can be resolved by a limiting instruction by the Court, if requested. The Sixth Circuit has often concluded that an appropriate instruction to the jury eliminates the chance of unfair prejudice, and that juries are presumed to follow such instructions. *See, e.g., United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) (noting that possible prejudicial spillover in a multi-defendant case can be resolved by a limiting instruction).

---

implicating SUTHERLAND in a double murder from 1999. On January 18, 2002, Person D gave a sworn statement to investigators at the Wayne County Prosecutor's Office regarding SUTHERLAND's involvement in the double murder. On January 24, 2002, Person D received a letter from defendant RAYMOND MELIOLI advising him that JEFF SMITH says Person D "ratted" on SUTHERLAND. The letter also contained threats. The following day, on January 25, 2002, SUTHERLAND sent Person D a letter containing the drawing of a target and the words "snitches are a dieing (sic) breed," and "miss is a lady's name." The DDMC crossed tridents appear in the center of the target.

Moreover, it should be noted that "prejudice" does not mean simply that the allegation and proffered evidence is harmful to the defendant's case. Rule 7(d) does not offer a defendant protection against allegations that are merely prejudicial; rather, the rule only protects against allegations that are nonessential and *unfairly* prejudicial. *Prejean,* 429 F.Supp.2d at 796 (noting that language is unfairly prejudicial if it "serves only to inflame the jury, confuse the issues, and blur the elements necessary for conviction."). Here, the allegations do not serve to inflame, but rather they are directly relevant to the RICO conspiracy and refer to underlying conduct no worse than other allegations in the indictment. In addition, the allegations will not confuse or blur the elements, as they are clearly presented as overt acts in the indictment and will be supported by a straightforward presentation of the evidence at trial. Even if SUTHERLAND might be unfairly prejudiced – which he is not – a limiting instruction would ameliorate any risk.

## CONCLUSION

For all of the reasons stated above, SUTHERLAND's motion should be

denied.


Respectfully submitted,

BARBARA L. McQUADE
United States Attorney


*S/Saima S. Mohsin*
SAIMA S. MOHSIN
ERIC M. STRAUS
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
Saima.Mohsin@usdoj.gov
Eric.Straus@usdoj.gov


JEROME M. MAIATICO
Trial Attorney
U.S. Department of Justice
1301 New York Avenue, N.W.
Room 703
Washington, D.C. 20530
(202) 615-8125
jerome.maiatico@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2014, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send

notification of such filing to all counsel of record.

s/ Jerome M. Maiatico
Trial Attorney
U.S. Department of Justice
1301 New York Avenue, N.W.
Room 703
Washington, D.C. 20530
(202) 615-8125
jerome.maiatico@usdoj.gov
