**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                  Criminal No.  11-20129
                                         Criminal No.  11-20066

D-12 VICTOR CARLOS CASTANO,
D-14 MICHAEL KENNETH RICH,
D-17 DAVID RANDY DROZDOWSKI,

     Defendants.

_____/

**OPINION AND ORDER DENYING TRIAL GROUP TWO'S
MOTIONS FOR JUDGMENT OF ACQUITTAL**

Before the court are multiple Motions for Judgment of Acquittal filed, individually

and collectively, by Defendants Victor Carlos Castano, Michael Kenneth Rich, and

David Randy Drozdowski following their jury convictions on December 15, 2015.

Defendant Rich filed his initial motion, directed at the drug quantity in Count One, on

January 26, 2016. (Dkt. # 1678.) On March 9, 2016, all three Defendants filed a joint

motion, challenging Count One, RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).

(Dkt. # 1735.) Defendant Drozdowski and Defendant Castano also filed additional

motions challenging Count One (again) and Count Three, the Methamphetamine

Distribution and Manufacturing Conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and

846. (Dkt. ## 1736 & 1737.) In Defendant Drozdowski's motion, he also challenges

Count Thirty-Nine, Manufacturing Methamphetamine, Aiding and Abetting, in violation of

21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The motions have been fully briefed, and with

sentencing hearings looming, they are ripe for review. No hearing is necessary on the

motions, and for the reasons stated below, they will be denied.

## I. STANDARD

Upon motion, the court may set aside a jury verdict of guilty and "enter judgment of acquittal." Fed. R. Crim. P. 29(c). "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, [the court is] limited to ascertaining whether, viewing the evidence in the light most favorable to the government, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); citing *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)). Moreover, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (*quoting United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)). Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'" *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

## II.  DISCUSSION

### A.  Count One, RICO Conspiracy

Defendants first challenge the sufficiency of the evidence with respect to their convictions under Count One, the RICO Conspiracy.   The substantive RICO statute provides, "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §
1962(c). Section 1962(d) makes it unlawful to conspire to violate § 1962(c).

1.   Enterprise

Defendants first argue that there was insufficient evidence of the existence of an
"enterprise" under RICO. (Defs' Joint Br.; Dkt. # 1735, Pg. ID 26651.) They argue that
not every member of the Devils Diciples Motorcycle Club ("DDMC") engaged in criminal
acts and that even those who did engage in criminal acts did not agree to function with
others as a continuing unit to achieve a common purpose. According to Defendants,
"there was no continuing unit acting to achieve a common purpose. Rather, it was a
disparate collection of individuals with individual . . . agendas, goals and purposes."
(Dkt. # 1735, Pg. ID 26652.)   Defendants point to evidence and testimony which
supports their theory that DDMC members operated for their own individual benefit, that
various club chapters operated differently, and that crimes committed often had a
personal agenda wholly separate from the DDMC's goals. Defendants contend that acts
of drug dealing where done an individual, *ad hoc*, basis, as were "acts of manufacture
for personal consumption, simple possession and use." (Dkt. # 1735, Pg. ID 26657.)
Thus, Defendants argue that "[w]hen the evidence is viewed as a whole and with a light
favorable to the government, a reasonable mind cannot conclude beyond a reasonable
doubt the existence of a continuing unit with a common purpose." (Dkt. # 1735, Pg. ID
26657, citing *Jackson v. Virginia*, 443 U.S. 307 (1979); *United States v. Nagi*, 541 F.
App'x 556, 569 (2013).)

Under the statute, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has stated:

> This enumeration of included enterprises is obviously broad, encompassing "*any* ... group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, see, *e.g., Ali v. Federal Bureau of Prisons,* 552 U.S. 214, 218 – 219, 128 S.Ct. 831, 833, 169 L.Ed.2d 680 (2008), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961; see also, *e.g., National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 257, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("RICO broadly defines 'enterprise' "); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346(1985) ("RICO is to be read broadly"); *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

*Boyle v. United States*, 556 U.S. 938, 944 (2009) (emphasis in original) (footnote omitted). The Court found in *United States v. Turkette*, 452 U.S. 576, 583 (1981) that "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." The enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."   *Boyle*, 556 U.S. at 946. That said, formal structure is not required. Indeed,

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Boyle*, 556 U.S. at 948.

Under this description, the court easily concludes that sufficient evidence was presented at trial to find the existence of an "enterprise." The jury heard testimony from nearly three dozen witness, many of whom were former "patched" members of the DDMC, and many of whom were acquaintances or girlfriends of members. Although not all the witnesses testified with the same degree of detail or credibility, what emerged from their testimony was a description of an organization with national and local structure, roughly but cohesively organized in a manner to achieve its legitimate, and its illegitimate purposes.

The DDMC operated through the issuance and enforcement of bylaws, with punishments that ranged from fines to expulsion to violence. The DDMC also had a clear club culture which was taught and ingrained in its members to further the purpose, goals, and longevity of the club. One of the goals that multiple witnesses described was the manufacture and distribution of drugs, particularly methamphetamine, which was central to the economic vitality of the DDMC as well as the culture and social life of the

DDMC. The DDMC's use and distribution of methamphetamine ensured the recruitment and retention of new members, and provided those members and the club a form of income; such activities also contributed to the image of the club as self-proclaimed outlaws. Additionally, evidence at trial proved the common purpose of engaging in gambling activities, theft, and violence, all designed to achieve the common purpose of effectuating the image, existence, and continuation of the DDMC.

While Defendants attempt to cast the DDMC as a group of individual drug users who did not form an enterprise, the court rejects that characterization. "Continuity of structure exists where there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than ad hoc, basis." *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) (quoting *United States v. Kragness*, 830 F.2d 842, 856 (8th Cir.1987)). There was more than sufficient evidence produced at trial for a rational jury to find beyond a reasonable doubt the existence of such a structure, through the testimony regarding the hierarchy within the club, the bylaws outlining the rules, and the methods of enforcement—through a culture of violence and submission. A rational jury could, and in fact did, find the existence of an enterprise, or a "group of individuals associated in fact" who were "associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583.

### 2.  Interstate Commerce

Defendants next argue that the government failed to prove that the alleged enterprise substantially affected interstate commerce.[1] Defendants contend that "there

---

1  Defendants bring their interstate commerce argument in their joint motion, but Defendants Castano and Drozdowski also challenge the interstate commerce

is no evidence that the enterprise affected interstate commerce, or that Defendants

Castano, Rich, or Drozdowski agreed, as part of a conspiracy, that the enterprise would

affect interstate commerce."[2]   (Dkt. # 1735, Pg. ID 26659) Similar to the argument with

respect to "enterprise," Defendants contend that the evidence "established nothing more

than individual activity with each member, associate, or friend acting out of personal

interest." (*Id.*) Defendants provide a few examples for the proposition that the individual

members' activities were just that: individual activities, rather than activities taken as

part of a conspiracy to advance a common goal or objective. Defendants contend:

> [T]he totality of the testimony, taken at face value, and without reading
> additional meaning into turns of phrase, shows that the DDMC was not an
> enterprise engaged in, or which affected, interstate commerce. As to
> allegations of violent activity, such activity has no nexus to interstate
> commerce. As to methamphetamine activity, there is nothing that indicates
> that the activity alleged had an effect on interstate commerce. Certainly,
> there is no evidence of an effect caused by Rich, Drozdowski, or Castano
> when each is considered individually and separately. As an element, it is
> for the Government to prove this effect, and the Government has failed to
> do so.

(Dkt. # 1735, Pg. ID 26660.) Defendants rely on *Waucaush v. United States*, 380 F.3d

251 (6th Cir. 2004) as primary support for their position.

In *Waucaush*, the Sixth Circuit reviewed, under 28 U.S.C. § 2255, whether a

defendant who pleaded guilty to a RICO charge was actually innocent. Specifically, the

Sixth Circuit examined whether "the activities of a Detroit-area street gang known as the

---

connection in their individual motions. (Dkt. ## 1736 &1737.) The individual motions,
which are identical to each other on this issue, do not materially add to the arguments
made in the joint motion.
2  Defendants slightly misstate the element. The Government need not have proven that
the Defendants agreed that their conspiracy would affect interstate commerce.   The
Government must prove the Defendants agreed to be part of the DDMC enterprise,
which itself was engaged in economic activities with an effect on interstate commerce.

Cash Flow Posse ('CFP') had a substantial effect on the nation's cash flow" such to satisfy the interstate commerce element. *Id.* at 253. The Sixth Circuit noted that "RICO regulates enterprises, not people" and thus in determining whether the interstate commerce element was satisfied, the court must look to the activities of the enterprise itself, rather than to the activities of the individual. *Id.* at 255. In *Waucaush*, the Sixth Circuit found that "there is no evidence in our case that the CFP was involved in any sort of economic enterprise." *Id.* at 256. In so holding, however, the panel found relevant that "[a]lthough one CFP member had previously been arrested for trafficking drugs, *an activity that is economic*, *United States v. Tucker,* 90 F.3d 1135, 1140 (6th Cir.1996), the Government admits that these drug charges were unrelated to the activities of the CFP." *Id.* (emphasis added).

Contrary to *Waucaush*, in this case there is ample evidence that the trafficking of drugs was an activity of the DDMC. And, where, as here, the enterprise engages in economic activity---such as illegal gambling, fenced stolen merchandise, and trafficking drugs--- the Government need not prove a substantial effect on interstate commerce. Instead, "a de minimis connection suffices for a RICO enterprise that 'affects interstate commerce.'" *Waucaush*, 380 F.3d at 255 (quoting *United States v. Riddle,* 249 F.3d 529, 537 (6th Cir. 2001)). This is because "[a]s the Ninth Circuit put it, in upholding a RICO conviction predicated on only a de minimis effect on commerce, 'the heart of [the defendant's] crimes, drug trafficking and extortion, are quintessential illegal economic activities.'" *Id.* (quoting *United States v. Shryock,* 342 F.3d 948, 984 n. 6 (9th Cir. 2003)).

The court agrees with the Government that there was abundant evidence adduced at trial from which a jury could find that the DDMC enterprise engaged in economic activities with at least a minimal effect on interstate commerce. Indeed, given the evidence related to the interstate manufacture and distribution of methamphetamine, a rational jury could find a more-than-incidental or minimal effect on interstate commerce. The drugs were produced in multiple states, with ingredients purchased and shipped from multiple states, sold in multiple states, and the proceeds were sent back across state lines, from as far away as California to Michigan. Additionally, motorcycles were stolen, dismantled, and resold, with each stage of this activity occurring across state lines. There was ample evidence of economic activity on which the jury could rely to find *at least* a minimal effect on interstate commerce.

### 3.   Association with the Enterprise

Defendants next contend that that the Government failed to establish that each Defendant was employed by or associated with the enterprise.   Defendants' argument consists of one paragraph which states, "The[re] is no competent evidence that all of the defendants in this case were engaged in, employed by, or associated with the criminal enterprise described in this indictment, and that they conducted or participated directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity. In fact, there is competent evidence that Victor Castano effectively withdrew from the DDMC and any conspiracy."   (Dkt. # 1735, Pg. ID 26661.)

"The concept of 'associat[ion]' requires both interpersonal relationships and a common interest." *Boyle v. United States*, 556 U.S. at 946. (quoting Webster's Third New International Dictionary 132 (1976) (defining "association" as "an organization of

persons having a common interest"); Black's Law Dictionary 156 (rev. 4th ed.1968)
(defining "association" as a "collection of persons who have joined together for a certain
object")). "Moreover, each conspirator does not have to 'participate in every phase of
the criminal venture, provided there is assent to contribute to a common enterprise.'"
*United States v. Gardiner*, 463 F.3d 445, 457 (6th Cir. 2006) (quoting *United States v.
Hughes,* 895 F.2d 1135, 1140 (6th Cir.1990)). "[A] defendant need not know about
every member and component of the enterprise; he need only know 'the general nature
of the enterprise and that the enterprise extends beyond his role.'" *United States v.
Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) (quoting *United States v. Eufrasio*, 935 F.2d
553, 577 n. 29 (3d Cir. 1991)).

Evidence at trial well supported the jury's conclusion that Castano, Rich, and
Drozdowski were associated with the DDMC enterprise.   Defendant Castano became a
patched member in August 2003, in the Grand Rapids chapter; Defendant Rich became
a patched member in the 1980s, in various chapters; Defendant Drozdowski became a
patched member in 2010, in the Blue Water Chapter.   Evidence adduced at trial proved
that all three Defendants knowingly joined the DDMC enterprise, knowing of its
activities, and with assent to joint those activities. Defendant Castano claims, without
citing any case law or evidence, that he withdrew from the conspiracy. There was more
than sufficient evidence to show that, even though he was placed for a time on inactive
status while federal charges were pending against him, he continued to be a patch-
wearing member of the DDMC thereafter. Indeed, Castano did not present any
evidence to show any affirmative action by him inconsistent with the DDMC's
conspiratorial enterprise, which in any way communicated his purported withdrawal.

10

*See United States v. U.S. Gypsum Co.,* 438 U.S. 422, 464-65 (1975). A rational jury could find beyond a reasonable doubt that all three Defendants were associated with the DDMC enterprise.

### 4.  Pattern of Activity, Operation of the Enterprise

Finally, with respect to Count One, Defendants jointly assert that there was insufficient evidence that each Defendant took part in the management or operation of the enterprise, or that the Defendants' activities were part of a pattern of racketeering activity. Defendants contend that the Government has shown "nothing more than individual action, done without prior agreement, understanding, or expectation that these actions would be directed toward a common goal" and as such the Government has failed to show both that Defendants participated in the affairs or operation of the enterprise and that Defendants participated in a pattern of racketeering activities.

With respect to whether the Government proved that Defendants agreed to conduct or participate in the affairs of the DDMC enterprise, the court finds a rational jury could so find beyond a reasonable doubt. The Government points to examples of evidence showing all three Defendants participated, in varying degrees in the affairs of the DDMC.   (Dkt. # 1773, Pg. ID 27932-35.) Evidence at trial showed that Defendant Castano did so, for example, by helping Port Huron Chapter President Vern Rich procure 400 pounds of marijuana for Mount Clemens Chapter President Michael Mastromatteo to sell in order to, in part, pay the bail for DDMC member David Roberts. Defendant Rich took part in the conduct of the DDMC when he agreed to sponsor Keith McFadden in the Anniston Chapter of the DDMC, after intervening when the Port Huron chapter stripped McFadden of his patch. Defendants Castano and Rich also

participated in the affairs of the DDMC enterprise when telling Keith McFadden to commit perjury and threatening Stella Herron in connection with Castano's earlier federal trial. Evidence at trial showed that Drozdowski, though relatively new to the club, attempted to protect its territory from a perceived rival club by assaulting Robert McLure at the New York, New York Bar.

The court also finds that sufficient proof supports the jury's verdict that Defendants agreed to join the enterprise with the intent to participate through a pattern of racketeering activity. "To show a pattern of racketeering activity conspiracy, a defendant need not personally agree to commit two predicate acts; rather, he need only 'kn[ow] about and agree[ ] to facilitate the scheme.'" *United States v. Tocco*, 200 F.3d 401, 425 (6th Cir. 2000) (quoting *Salinas v. United States*, 522 U.S. 52, 66 (1997)). A rational jury could find such a pattern beyond a reasonable doubt, based on the proofs presented at trial. Not only could the jury rely on the acts noted above by the individual Defendants, but the jury could rely on any acts conducted by a co-conspirator. As the Government argues, the evidence at trial showed that these three Defendants agreed "that someone would participate in numerous racketeering acts of the types described in the indictment. These defendants also personally agreed to commit, and did commit, numerous racketeering activities, including drug trafficking, extortion, robbery, witness tampering, perjury, obstruction of justice, and illegal gambling activity, that these activities had a nexus to and were related to the enterprise." (Dkt. # 1773, Pg. ID 27938-39.) Defendants do not provide much argument to this point, stating simply that the Government did not prove a pattern of racketeering activity and that their actions were of an individual nature. (Dkt. # 1735, Pg. ID 26663.) The court disagrees.

12

Fundamentally, "it is not determinative that the defendant committed the crime to further his own agenda, if indeed he was only able to commit the crime by virtue of his position within the enterprise." *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000) (citing *Salinas v. United States,* 522 U.S. 52, 63 (1997)). Thus, even if some of Defendants' individual actions had, in part, arisen from an individual agenda, that would not be determinative. But beyond that, there is ample evidence that Defendants here agreed to join the DDMC enterprise with the intent that they or other conspirators would participate in a pattern of racketeering activity. "A defendant's agreement to participate in the RICO conspiracy may be inferred from his acts," *Gardiner*, 463 F.3d at 457, and a rational jury could easily find beyond a reasonable doubt that Defendants' acts evinced an agreement to join the DDMC enterprise with the intent to participate through a pattern of racketeering activity.

### 5. Drug Quantity

Defendant Michael Rich filed a separate motion attacking the drug quantity attributable to him under Count One. Specifically, in connection with Count One, the jury made a finding that Defendant Rich agreed that at least 50 grams methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine was or would be involved in the conspiracy. Defendant Rich asserts that this verdict was not supported by proof beyond a reasonable doubt. Defendant Rich states that he "was not even charged in Count 3 (conspiracy to manufacture, distribute and possess with intent to distribute methamphetamine a conspiracy going back to on or about mid 1990s)" and therefore intimates that the evidence could not support the drug quantity attributable to him under Count One.

13

Rich argues that for most of the alleged conspiracy he was living in Alabama and, relying on the testimony of Vern Rich, he claims that "absolutely nothing" happened in Alabama. (Dkt. # 1699, Pg. ID 26187.) Defendant's argument, however, is misplaced. First, the fact that Defendant was in Alabama bears little on his involvement and responsibility in the conspiracy. Evidence at trial showed that Defendant maintained a leadership position in Alabama, and he also assisted in the management of the national enterprise. As a long-standing member of the DDMC, and one in a leadership role at the Alabama chapter, Defendant was intimately involved in the distribution of methamphetamine. Testimony was adduced that he "fronted" Jeffrey Armstrong with "8-balls", that methamphetamine was distributed at the Anniston Clubhouse (where Defendant was Treasurer), and that Defendant indeed kept methamphetamine and marijuana in his pocket to distribute to DDMC members at parties. The "absolutely nothing" comment seemed to the court as an observation of laziness, more accusation than exculpation. Though it appears that at some point Defendant himself stopped using drugs, after suffering a heart attack, more than sufficient evidence was offered at trial to support the jury's finding of the drug quantity attributable to Defendant under Count One.

## B. Count Three: Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute More Than 500 Grams of Methamphetamine

Defendants Castano and Drozdowski argue in their individual motions that there was insufficient evidence to sustain a conviction under 18 U.S.C. § 846. As Defendants correctly state, "To sustain a conviction under [§ 846] the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." *United States v. Gaitan-Acevedo*,

148 F.3d 577, 586 (6th Cir. 1998) (quoting *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990) (alteration in original)). Defendants Castano and Drozdowski argue that there is no evidence that they entered into any such conspiracy; rather, they say, the evidence shows only that they occasionally used methamphetamine. (Dkt. # 1736, Pg. ID 26674; Dkt. # 1737, Pg. ID 26682.) They further argue that even if there was sufficient evidence that they entered into a conspiracy, no rational juror could find beyond a reasonable doubt that any conspiracy involved more than 500 grams of methamphetamine.

"[T]o establish a drug conspiracy, the government must prove (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Colon*, 268 F.3d 367, 375 (6th Cir. 2001). "Once a conspiracy is proven beyond a reasonable doubt, however, a defendant's connection to the conspiracy 'need only be slight,' and a defendant's knowledge of and participation in a conspiracy 'may be inferred from his conduct and established by circumstantial evidence.'" *United States v. Warman*, 578 F.3d 320, 332–33 (6th Cir. 2009) (quoting *United States v. Martinez*, 430 F.3d 317, 330–331 (6th Cir. 2005)).   The evidence supports the jury's verdict on this count. Exhaustive evidence was produced at trial showing the extent of the illegal drug activities of the DDMC, and the conspiracy to engage in those activities. Evidence showed that both Defendant Castano and Drozdowski knew of the illegal drug activities of the DDMC prior to becoming fully patched members, that Defendants knowingly agreed to join the drug conspiracy, and that they in turn participated in the activity themselves. As the Government succinctly describes it, "there was a longstanding, ongoing and prolific

demand for methamphetamine both within and without the club, that the club and its members facilitated drug trafficking activities, and that the club protected its patch holders from detection from law enforcement and competitors." (Dkt. # 1773, Pg. ID 27945.)

Although sufficient evidence exists that both Defendants knew of and voluntarily agreed to enter into the broad conspiracy, individual testimony also supports the finding that Defendant Drozdowski participated in the conspiracy by himself manufacturing and distributing methamphetamine. (*See* Testimony of Ronald Roberts, Donna Cook, Tamara Allard, Heather Kaster, Jesse Williams.) These witnesses testified about how Drozdowski learned to manufacture methamphetamine, how supplies were furnished to Drozdowski for production, and how Drozdowski then manufactured and supplied others with methamphetamine. Evidence was also presented that Castano knew of and voluntarily entered into the methamphetamine conspiracy. (*See, e.g.,* Testimony of Vern Rich, William Fleming, Micahel Mastromatteo, Jennifer Cicola.) Once a member of the conspiracy, Castano actively participated in the conspiracy through his efforts in obtaining and distributing methamphetamine.

As to the quantity attributable to Drozdowski and Castano, the jury could rely on evidence related to Defendants' own conduct or the conduct of other conspirators reasonably foreseeable to Drozdowski and Castano. Witness after witness testified regarding the vast amount of supplies which were furnished to Drozdowski and others to manufacture the drugs, how often Drozdowski and others would meet to produce the drugs, and how much yield was in fact produced. Evidence also showed that Castano, too, knew of the extent of the conspiracy into which he was entering, that he obtained

high quality "ice" from his Mexican connection, that he was involved in a plan to purchase 28.3 grams of pure methamphetamine to then resell, and that he facilitated sales either through himself or through others.

In sum, sufficient evidence exists to support the jury's finding with respect to both Castano and Drozdowski that they joined a methamphetamine manufacturing and distribution conspiracy which involved more than 50 grams of methamphetamine (or more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine).

### C.   Count Thirty-Nine: Aiding and Abetting in the Manufacture of 500 Grams or More of Methamphetamine

Defendant Drozdowski contends that his conviction under Count Thirty-Nine, for aiding and abetting the manufacture of 500 grams or more of methamphetamine, cannot be sustained based on the evidence produced at trial. He argues that the Government's witnesses, Heather Kaster, Tammy Allard, Ronald Roberts, and Jessie Williams gave testimony that was "inconsistent and seemingly pulled from thin air." (Dkt. # 1736, Pg. ID 26675.) While conceding that the Government "was able to place in the witnesses' testimony that the methamphetamine was pure," Defendant asserts that the Government's questions were blatantly leading, and that the testimony was not credible, and that the evidence was therefore insufficient. (*Id.*) These types of arguments, however, cannot form the basis of a meritorious motion under Rule 29, where the court is "limited to ascertaining whether, viewing the evidence in the light most favorable to the government, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (emphasis omitted) (quoting *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979); citing *United States v. Talley*,164 F.3d 989, 996 (6th Cir. 1999)).   Defendant's arguments go to credibility rather than sufficiency. Indeed, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quotation omitted). Though Defendant argues that these witnesses gave inconsistent and weak testimony, the jury considered their testimony, and permitted to find them to be credible. Viewing the evidence, as the court must, in a light most favorable to the Government, the court cannot conclude that *no* rational jury could have relied on the challenged testimony to find Defendant guilty beyond a reasonable doubt.

Defendant further asserts that because the statute of limitations on this offense is five years, 18 U.S.C. § 3282(a), and because Count 39 was not brought until the Fourth Superceding Indictment on July 29, 2015, the Government could not rely on any conduct occurring before July 29, 2010 to sustain this conviction. To the court's recollection, this is the first time Defendant has raised a statute of limitations argument with respect to Count 39.   As the Government correctly points out, this argument should have been made before trial in a motion in limine, or even earlier in a motion under Federal Rule of Criminal Procedure 12(c)(3), which allows for motions attacking defects in the prosecution or in the indictment. If, as here, Defendant's motion is untimely, he must show good cause for his failure to bring the motion earlier. Defendant does not even attempt to assert good cause, nor could the court conceive of any grounds for cause; this last-hour argument resembles more closely the strategic than the legitimate.

Nonetheless, the evidence at trial showed that Defendant was engaged in the production of methamphetamine from 2008 until 2012. The court accepts the Government's position that the manufacture of methamphetamine is not a singular event, but an ongoing process, with multiple stages of preparation, gathering of supplies, producing the drugs, and breaking down the equipment.   This process, as charged in Count 39, is not an isolated occurrence, but an ongoing affair. Thus, the jury could reasonably rely on the entire the time period in calculating the amount. However, even if the court were to impose a limitations period which allowed only evidence of acts after July 29, 2010, the testimony of Heather Kaster, viewed in a light most favorable to the Government, would itself support the jury's quantity finding.

### III.   CONCLUSION

Defendants' motions here amount to little more than a recapitulation of final arguments that failed to dissuade the jury. While they present a different theory of the evidence presented at trial, namely that Defendants were individuals operating more as renegade bikers than as conspirators of a RICO enterprise, that theory was rejected by the jury. On Rule 29 motion, Defendants bear a very heavy burden. *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)(citation omitted). Here, they simply have not come close to meeting that burden. Sufficient, even ample, evidence supports the jury's verdicts against all three of them. Accordingly,

IT IS ORDERED that Defendants' Motions for Judgment of Acquittal (Dkt. ## 1678, 1735, 1736 & 1737) are DENIED.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:   October 26, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 26, 2018, by electronic and/or ordinary mail.

                       __s/Lisa Wagner_____
                       Case Manager and Deputy Clerk
                       (810)292-6522

S:\CLELAND\CLELAND\JUDGE'S DESK\C3 ORDERS\11-20129.RICH.RULE29MOTIONS.TRIALGROUP2.CHD.RHC.4.DOCX