UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

v.

VICTOR CARLOS CASTANO,

       Defendant/Petitioner.
_____/

Criminal Case No. 11-20066
Criminal Case No. 11-20129
Civil Case No. 23-11377

Sean F. Cox
United States District Court Judge

**OPINION & ORDER**
**DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**

In Criminal Case Numbers 11-20129 and 11-20066, assigned to the Honorable Robert H. Cleland, the "federal government successfully prosecuted multiple members of the 'Devils Diciples [sic] Motorcycle Club' (DDMC) for their role in a RICO enterprise that trafficked large quantities of drugs (namely methamphetamine) and engaged in numerous other illegal acts (like violent crimes, illicit gambling, thefts, and obstruction of justice)." *United States v. Rich*, 14 F.4th 489, 491 (6th Cir. 2021). Defendant/Petitioner Victor Carlos Castano ("Castano") was one of those members and, following a jury trial, he was convicted of multiple counts. Castano's direct appeal was unsuccessful. The matter is now before the Court on Castano's "Motion to Vacate Conviction And Sentence Under 28 U.S.C. § 2255" that addresses both of his 2011 criminal cases. The Court concludes that an evidentiary hearing is not warranted as to any of Castano's claims and that the matter is ripe for a decision by this Court. For the reasons that follow, the Court DENIES the motion.

**BACKGROUND**

In Criminal Case Number 05-80554, Castano was charged with drug and firearms crimes. That case was assigned to the Honorable Lawrence P. Zatkoff. Castano was indicted for : (I) felon in possession of a firearm; (II) possession with intent to distribute marijuana; and (III) possession of a firearm during a drug trafficking crime. *United States v. Castano*, 906 F.3d 458, 461 (6th Cir. 2018). Castano "pled guilty to Count II, and at the end of his 2006 trial, a jury convicted him of Counts I & III." *Id.*

"Castano is a member of the Devils Diciples [sic] Motorcycle Club ("DDMC"), as were most the cast testifying at his 2006 trial." *Id.* "In subsequent interviews with the FBI, Castano admitted that he and other DDMC members procured two witnesses—Keith McFadden and Stella Herron—to give perjured testimony at Castano's 2006 trial." *Id.*

In Criminal Case Number 11-20066, Castano and others were indicted for subornation of perjury and obstruction of justice and for conspiracy to distribute marijuana. That case was assigned to the Honorable Robert Cleland.

In Criminal Case Number 11-20129, Castano and many of the same Defendants were indicted "in a massive, 52-defendant RICO conspiracy, with DDMC as the enterprise." *United States v. Castano*, 906 F.3d at 461. This case was also assigned to Judge Cleland.

Castano was tried in single 2015 jury trial, before Judge Cleland, on both indictments. *Id*
"Castano was convicted of: (1) RICO conspiracy; (2) conspiracy to manufacture, distribute or possess with intent to distribute controlled substances; (3) conspiracy to obstruct justice; (4) subornation of perjury; (5) obstruction of justice; and (6) conspiracy to possess with intent to

distribute marijuana." *United States v. Rich*, 2021 WL 4144059 at *49 (6th Cir. 2021).

Before he was sentenced by Judge Cleland in Case Numbers 11-20066 and 11-20129, Castano filed a petition for writ of *coram nobis* from the district court," hoping to have his 2006 conviction for felon in possession vacated, so that it would not be used to enhance his impending" sentencing before Judge Cleland. *Id.* at 462. The district court denied the petition and the United States Court of Appeals for the Sixth Circuit affirmed the district court's denial of that petition in its October 15, 2018 decision. *Id.*

On December 17, 2018, Judge Cleland sentenced Castano in the two 2011 criminal cases before him. "At sentencing, the district court calculated Castano's offense level as 41 after applying several offense-characteristic enhancements, which combined with Castano's Criminal History Category of II to produce a Guidelines range of 360 months' imprisonment to life. The district court granted Castano's request for a downward variance and imposed a sentence of 336 months' imprisonment." *United States v. Rich*, 2021 WL 4144059 at *49 (6th Cir. 2021).

Acting through counsel, Castano filed a direct appeal, that was consolidated with the appeals of several of his Co-Defendants. In that consolidated appeal, the Defendants "raised over seventy issues on appeal." *United States v. Rich*, 14 F.4th at 491. The United States Court of Appeals for the Sixth Circuit found all them lacking in merit and affirmed Defendants' convictions and sentences, including Castano's convictions and sentence. It addressed some of the challenges in a published opinion issued on September 13, 2021. *United States v. Rich*, 14 F.4th 489, 491 (6th Cir. 2021). It also issued an unpublished appendix to that Opinion, spanning more than a hundred pages. *United States v. Rich*, 2021 WL 4144059 (6th Cir. 2021).

Castano filed a petition for a writ of certiorai, that was denied by the United States

3

Supreme Court on June 14, 2022.

Acting through counsel, on June 12, 2023, Castano filed a combined "Motion to Vacate Sentence Conviction And Sentenced Under 28 U.S.C. § 2255" that addresses both of his 2011 criminal cases that were assigned to Judge Cleland. In it, he asserts the following six grounds for relief:

| | |
|---|---|
| Ground One: | Castano's right to the effective assistance of counsel was violated when his attorney advised him to agree to the terms of a proffer letter and submit to a proffer interview without explaining that his incriminating statements could be, and likely would be, used against him in order to charge Castano with crimes. |
| Ground Two: | Castano's right to the effective assistance of counsel was violated when counsel failed to timely respond to the government's motion in limine requesting that Castano's proffered statements be admitted at trial and then failed to use available evidence to refute the government's claim that Castano violated the terms of the proffer letter. |
| Ground Three: | Castano's right to the effective assistance of counsel was violated when counsel stipulated to a plainly incorrect marijuana weight and relieved the government of its burden of proof with respect to element of drug weight on Count 6. |
| Ground Four: | Castano's right to the effective assistance of counsel was violated when counsel failed to make appropriate objections to calculations under the Guidelines at sentencing. |
| Ground Five: | Castano's marijuana conviction was expunged, requiring that his sentence be vacated and he be resentenced under a Criminal History Category I. |
| Ground Six: | New and developing law demonstrates that the trial court's reliance on acquitted conduct in determining Castano's offense level violated due process and the right to a jury trial under the Fifth and Sixth Amendments to the United States Constitution. |

4

(Castano's Brief at 2-3).

Following Judge Cleland's retirement from the bench, both of the 2011 criminal cases, and the related habeas civil actions, were reassigned to the undersigned judge.

The Government filed its combined response brief in opposition to Castano's combined § 2255 Motion on October 19, 2023. Castano did not file a reply brief and the time permitted for doing so has passed. The matter is ripe for a decision by this Court.

## ANALYSIS

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255.

To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Defendants seeking to set aside their sentences pursuant to 28 U.S.C. section 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 F. App'x 73, 76 (6th Cir. 2003).

It is well established that when a defendant files a section 2255 motion, he must set forth specific facts in his motion establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) (noting that where "the petition supplied no factual material" upon which to test

5

the claims, "[s]uch a pleading does not call for an evidentiary hearing."); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("When a motion is made to vacate or set aside a judgment under Section 2255, the movant must set forth facts which entitle him to relief. Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing.").

Here, Castano asserts several grounds for relief in his § 2255 Motion.

## I. Ineffective-Assistance-Of-Counsel Claims

As his first through fourth grounds for relief, Castano asserts ineffective-assistance-of-counsel claims.

The familiar United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 688 (1984) governs this Court's analysis of ineffective assistance of counsel claims. "In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 F. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, the defendant must show that "counsel's representation fell below the objective standard of reasonableness." *Lint,* 542 F. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Lint,* 542 F. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, Petitioner must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations omitted).

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 F. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

### A. Agreeing To Proffer Letter And Being Interviewed

After having served the prison sentence imposed in his 2005 case before Judge Zatkoff, but prior to being indicted in either of the 2011 criminal cases, Castano entered into a proffer agreement with the government and was interviewed. Castano now claims that his right to the effective assistance of counsel was violated when his attorney advised him to agree to the terms of the proffer letter, and submit to a proffer interview, "without explaining that his incriminating statements could be, and likely would be, used against him in order to charge Castano with crimes." (Petition at PageID.23022).

The government contends that this ground for relief fails for multiple reasons – including that Castano did not have a Sixth Amendment right to counsel during his pre-indictment proffer session. (Govt.'s Br. at PageID.23138).

The Court agrees that his ground for relief fails because Castano did not have a Sixth

Amendment right to counsel at the time of his proffer letter or his interview, both of which occurred *before he was indicted* in either of the 2011 criminal cases.

In *Turner v. United States,* the Sixth Circuit explained that the "Sixth Amendment right to counsel 'does not attach until a prosecution is commenced.' *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 198, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). A prosecution commences only at or after 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Id.* (quoting *Gouveia,* 467 U.S. at 188, 104 S.Ct. 2292)." *Turner v. United States*. 885 F.3d 949, 952 (6th Cir. 2018); *see also Murray v. United States*, 2018 WL 11303167 at *2 (6th Cir. 2018) (Sixth Amendment right to counsel had not yet attached at time of proffer discussions, that occurred before the initiation of adversary judicial criminal proceedings). When there is no Sixth Amendment right to counsel there is accordingly no basis for a claim of ineffective assistance of counsel. *United States v. Turner,* 885 F.3d at 955.

   **B.**   **Counsel's Alleged Failure To Respond To Motion In Limine**

Next, Castano claims that his "right to the effective assistance of counsel was violated when counsel failed to timely respond to the government's motion in limine requesting that Castano's proffered statements be admitted at trial and then failed to use available evidence to refute the government's claim that Castano violated the terms of the proffer letter." (Petition at PageID.23034; *see also* ECF No. 506-2 at PageID.22891, asserting that Castano's "trial counsel, Richard Convertino, failed to file a response to the government's motion.").

This claim also fails. Contrary to Castano's assertion, his defense counsel did file a

response brief in opposition to the Government's motion in limine. (*See* Exhibit 2 to Govt.'s Response, attaching Castano's response brief). There is no indication that Judge Cleland declined to consider it, or the arguments raised in it and during the hearing, on the basis of timeliness. And, as the Government notes, that brief essentially argued much of what Castano argues now – that Castano did not lie, but rather was truthful. Moreover, the claim appears foreclosed in any event because it is a "repackaged claim that was rejected by the district court and Sixth Circuit." (Govt.'s Br. at PageID.23143; *see* unpublished appendix to *United States v. Rich*, at 10-15).

    C.    **Stipulation To Marijuana Weight**

At the 2015 jury trial, the parties entered into stipulation regarding the weight and chemical nature of various controlled substances. (ECF No. 509-5). That stipulation included a stipulation regarding marijuana "weighing 50.68 pounds, or 111.50 kilograms." (*Id*. at PageID.23112).

As his third ground for relief, Castano claims that his counsel was ineffective for having "stipulated to a plainly incorrect marijuana weight" and thereby relieving "the government of its burden of proof" with respect to the drug weight. (Petition at PageID. 23036). In support of this argument, Castano correctly notes that 50.68 pounds converts to 22.988 kilograms, not 111.50 kilograms. Castano faults his counsel for agreeing to the stipulation and not detecting the conversion error. (*See* Castano's Br. at 35) (arguing that "[r]easonable counsel would have undoubtedly caught this error and would not have stipulated to an incorrect amount of marijuana.").

The Government's response to this challenge is two-fold. First, it asserts that Castano

cannot show the requisite prejudice under *Strickland* because he "cannot show that his sentence would have been any different given the higher guidelines on Count One – RICO and Count Three – Meth manufacturing. (*See* PSR guideline calculations)." (Govt.'s Br. at 15). Second, it contends that, in any event, "there was ample testimony about marijuana distributions in excess of 100 kilograms, such that the stipulation error was at best harmless or actually irrelevant." (*Id*). The Government's brief summarizes the trial evidence showing there was more than 100 kilograms distributed:

> Vern Rich testified similarly to Michael Mastromatteo. In approximately April 2004, while Rich was President of the Port Huron Chapter of the DDMC, Vern Rich and Castano were involved in securing 400 pounds of marijuana that Michael Mastromatteo had ordered. ®. 1625: Trial 2 Vol. 16A Vernon Rich Tr. at 141-144). Mastromatteo approached Castano about the deal, and Castano discussed the matter with Rich because, he explained, "once we have 400 pounds of weed here, it's here. You can't – it's not returnable. You know, the Mexicans don't do that." (*Id*.).
> Castano ordered the marijuana and the first 200 pounds (90.7184 kg.) arrived within a week; it was secreted behind a hidden wall at Rich's place. (*Id*. at 144-145). Another 200 pounds (90.7184 kg.) was delivered the following day and secured in a hotel/motel room near Rich's home. (*Id*. at 145). The marijuana was tightly compressed into 25-pound blocks for shipment to the United States. (*Id*. at 149). Compressed marijuana is not ready for use and must be broken off and processed before it is ready for consumption. (*Id*.).
> Rich explained that the weed was worth approximately $400,000 because it sold for $800-$1200 per pound, for an average of $1000/pound. (*Id*. at 146). The 400 pounds of marijuana had been "fronted" and Castano and Rich had expected Mastromatteo's customer to purchase the entire shipment. (Id. at 147). When Mastromatteo's customer balked because the weed was compressed, Rich told DDMC leadership, who were "up on what was going on". (Id. at 150). Rich confronted Mastromatteo at the Mount Clemens Clubhouse and a fistfight ensued in front of DDMC Vice President Darrah for "reneging on the deal." (Id. at 147, 151). After the fight, Rich explained that they were still stuck with the 400 pounds of marijuana. Therefore, they decided to help each other, "Well, after we socked on each other, come to the conclusion now it's time to help each other." (*Id*. at 151).
> Vern Rich and Castano worked together to sell the marijuana, first breaking it up and repackaging it into smaller quantities. (*Id*. at 150-152). The marijuana sold in approximately one month. Rich sold pound quantities to, among

> others, DDMC members like JP, Scotty Z, and Mastromatteo. (*Id.* at 153-154). After selling the 400 pounds, Castano and Rich acquired an additional 100 pounds (90.7184 kg.) of marijuana from Texas. (Id. at 154). Castano purchased a trailer and a shed at a campground in Texas and secured the 100 pounds (90.7184 kg.) of marijuana in the shed. (*Id*. at 154-156). In late May 2004, Castano and Rich sent "Gun Control" and Lonsby to Texas in Rich's van to retrieve it. (*Id.*).
>
> As can be seen, despite the faulty drug stipulation, there was abundant evidence of marijuana in excess of 100 kilograms during the course of the conspiracy. Both Vern Rich and Michael Mastromatteo testified about the 400 lb. deal. Defendant was not prejudiced by the stipulation, would not have made a difference in the guidelines for marijuana distribution, nor changed the much higher meth and RICO guidelines which largely drove defendant's final sentence of 336 months. (See Judgement of Conviction No. 11-20129). Defendant therefore is not entitled under *Strickland* to relief on this basis.

(*Id*. at 15-17).

The Court agrees that Castano cannot establish the requisite prejudice and rejects this challenge.

### D. Objections To Guidelines Calculations

As his fourth and final ineffective-assistance-of-counsel claim, Castano claims that his attorney "failed to make appropriate objections to the calculations under the Guidelines at sentencing." (Petition at PageID.23037).

But Castano's counsel *did make* objections to the Guidelines at sentencing. (*See* Govt.'s Exhibit 4, Castano's Sentencing Memorandum with Objections). Castano makes several arguments in this section of his petition and brief, that were already presented to, and rejected by, the Sixth Circuit on direct appeal.

For example, Castano claims that his attorney was ineffective for failing to object to the district court having included pseudoephedrine purchases as relevant conduct in relation to him. (Pet'r's Br. at 40). These arguments were presented to, and rejected by, the Sixth Circuit on direct appeal. See *United States v. Rich*, 2021 WL 4144059 at *50 (6th Cir. 2021).

11

As the Government notes, claims "raised on direct appeal and resolved adversely to the petitioner should be deemed unreviewable under § 2255 as previously litigated." (Govt.'s Br. at 17). That is because, "[a]s a general rule § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998); *see also Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law.").

## II.   Resentencing Claim

Next, as his fifth ground for relief, Castano asserts that his "marijuana conviction was expunged, requiring that his sentence be vacated and he be resentenced under a Criminal History Category I." (Petition at PageID.23039).

In response, the Government explains that Castano "cannot show that the sentencing result would have been any different:

> The United States Probation Department calculated Defendant's combined adjusted offense level at 48, however, pursuant to U.S.S.G. Chapter 5, Part A, in those rare instances where the total offense level exceeds 43, the offense level is treated as a level 43. Defendant had a criminal history category II. That combination resulted in a guideline range of Life in prison. Defendant was ultimately sentenced by the district court to a below guideline sentence of 336 months imprisonment. A criminal history of I, which defendant advocates resentencing under, would still result in a guideline sentence range of Life imprisonment. And in any event, a below guideline sentence was ultimately imposed.

(Govt.'s Br. at 18-19).

In addition, the Government correctly notes that even if there would have been an effect on Castano's guidelines, a resentencing would be prohibited under the circumstances presented here:

> Even if there would be an effect on the guidelines, the Michigan Clean Slate Act clearly prohibits resentencing. MCL 780.622 and 780.623 make it clear that even a conviction that was set aside due to the automatic set aside process could still be used as a prior conviction during sentencing. This is reinforced by the U.S. Sentencing Guidelines. The Sentencing Guidelines define "prior sentence" as it is used in calculating criminal history under § 4A1.1 in §4A1.2(a)(1): "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." *See* U.S.S.G. § 4A1.2 note 10 (providing that sentences set aside "for reasons unrelated to innocence or errors of law ... are to be counted"); *United States v. Hines*, 133 F.3d 1360, 1367 (10th Cir. 1998) (holding that a conviction "expunged" under state law "unrelated to constitutional invalidity, innocence, or errors of law" was not "expunged" within the meaning of the sentencing guidelines); *cf. Black's Law Dictionary* (8th ed.2004) (defining "expunge" as "[t]o erase or destroy"). There is no reason for resentencing.

(*Id*. at 19-20).

The Court agrees that this claim lacks merit.

### III.    Offense Level Claim

Finally, as his sixth ground for relief, Castano asserts that "[n]ew and developing law demonstrates that the trial court's reliance on acquitted conduct in determining Castano's offense level violated due process and the right to a jury trial under the Fifth and Sixth Amendments to the United States Constitution." (Petition at PageID.23040).

In its response brief, the Government concisely and persuasively explains why this final claim fails:

> This is a specious argument which conflates acquitted charges with conduct which can form the basis for two separate crimes – conspiracy to manufacture methamphetamine and possession of methamphetamine precursors. Much like robbing a bank with a gun can constitute both armed bank robbery and felony firearm. The fact that Castano was acquitted of the crime of possession of methamphetamine precursors does not mean that those underlying established facts cannot form the basis for sentencing purposes on a methamphetamine manufacturing count. In fact, that specific claim was rejected by the Sixth Circuit:
>
>> That Castano was acquitted of possessing methamphetamine

> precursors is not dispositive of the issue because acquitted conduct may be used in sentencing so long as the district court finds the relevant facts by a preponderance of the evidence. *United States v. White*, 551 F.3d 381, 383 (6th Cir. 2008) (en banc).
>
> *United States v. Rich*, 2021 WL 4144059 *50 (6th Cir. 2021). Moreover, Defendant fails to provide any legal support for this novel argument.

(Govt.'s Br. at 20).

The Court agrees and rejects this final claim.

## CONCLUSION & ORDER

For the reasons above, the Court ORDERS that Castano's § 2255 Motion is DENIED.

The Court further DECLINES TO ISSUE a certificate of appealability.

IT IS SO ORDERED.

                                                    s/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated: July 31, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 31, 2024, by electronic and/or ordinary mail.

                                                    s/J. McCoy
                                                    Case Manager